*Exceptions overruled.*

*H. H. Winslow*, (*J. A. E. Moroney & F. McDermott* with him,) for the defendants.

*J. J. Higgins*, District Attorney, for the Commonwealth.

---

JOHN NOBLE, administrator, *vs.* JOSEPH BURNETT COMPANY & others.

Suffolk.    November 29, 1910. — March 1, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Equity Jurisdiction*, Accounting.  *Contract*, Validity.  *Partnership.  Corporation. Equity Pleading and Practice*, Bill.  *Words*, "A fair and equitable share."

A bill in equity by the administrator of the estate of a chemist against the surviving members of a certain copartnership alleged that the chemist made a contract with the copartnership by the provisions of which the chemist was to devote his time and skill to producing formulas of a certain kind "for the mutual benefit of himself and said copartnership" and to permit the copartnership to make use of the formulas for manufacturing purposes, and the copartnership was to manufacture and put upon the market compounds made in accordance with such of the formulas as they believed capable of yielding a profit and to pay the chemist "a fair and equitable share of the net profits"; that the chemist performed his part of the contract, and that, although there were large profits realized from the enterprise by the copartnership, the defendants refused to account therefor to the plaintiff; that an accounting would be an extremely complicated and difficult matter and that the common law would afford no adequate and complete relief. There was a prayer for an accounting and for an order for a payment to the plaintiff of what was due him as administrator. The defendants demurred to the bill. *Held*, that there was nothing to show that the rule for ascertaining the chemist's share of the net profits, "a fair and equitable share," was so indefinite or that its application was so impracticable that it could not be applied with

reasonable certainty to the circumstances under which the profits were made; and that equity had jurisdiction to compel the defendants to account, irrespective of the question whether under the contract the chemist and the copartnership became partners.

If the surviving members of a copartnership, to whom a chemist had entrusted certain formulas in the nature of trade secrets under a contract whereby the copartnership was to manufacture and sell compounds made from the formulas and share the profits with the chemist, form a corporation of which they are the president, treasurer, a majority of the board of directors and the owners of the controlling shares of the capital stock, and then convey the formulas to the corporation which continues to use them without accounting to the chemist for profits actually realized, the corporation receives the formulas and uses them with full knowledge of the breach of trust of the copartnership and must be held to hold and to use them subject to the same trust under which they were held by the copartnership; and therefore after the death of the chemist, the administrator of his estate may maintain a bill in equity to compel the corporation to account for the chemist's share of the net profits realized by the corporation in his lifetime.

A bill in equity, by the administrator of the estate of a chemist against the surviving members of a copartnership and a corporation, alleged in substance that the chemist had made a contract with the copartnership by which he entrusted to them certain formulas under an agreement that they should manufacture and sell compounds made from such formulas and should divide with him the net profits thereof, that the copartnership realized profits but did not account to the chemist, denying that there were any profits, that, one of the copartnership having died, the individual defendants, who were the surviving partners, formed the defendant corporation, they being its president, treasurer, a majority of its board of directors and the owners of the controlling interest of the capital stock, that the individual defendants as surviving copartners conveyed the formulas to the corporation, which used them and realized profits, but refused to account to the chemist or to the plaintiff. The prayers of the bill were for an accounting, injunctions against the divulging of the formulas, a determination of the plaintiff's rights as to the formulas and a decree that the corporation be required to recognize those rights. *Held*, that the bill was not multifarious, the fundamental question being the interest of the chemist in the formulas and all the defendants being interested directly in that question.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 16, 1909, and amended on March 11 and April 1, 1910, by the administrator with the will annexed of the estate not already administered of George F. H. Markoe, late of Boston, against the Joseph Burnett Company, Robert M. Burnett and Harry Burnett. The allegations of the bill were in substance as follows:

The plaintiff's testator was by profession an apothecary and chemist, the dean of the Massachusetts College of Pharmacy, and a member and officer of various scientific societies. He had for many years made a special study of food chemistry, especially that branch pertaining to the subject of essences, flavoring ex-

tracts, coloring matters for food stuffs, which was at that time little known, and to the subject of perfumery, and had made valuable discoveries and had acquired expert knowledge and an international reputation in those branches of chemical science.

The defendant the Joseph Burnett Company is a Massachusetts corporation, incorporated in 1895, with its principal place of business in Boston and is engaged in the manufacture and sale of flavoring extracts, essences, and coloring materials used in the preparation of foods, and in the manufacture of such extracts, essences, and coloring materials it was using at the time of the commencement of the suit, and since the time of its incorporation had used, certain secret processes and formulas acquired at or about the time of its incorporation from the copartnership, Joseph Burnett and Company, which had had its principal place of business in said Boston.   The firm of Joseph Burnett and Company at the time of the incorporation of the Joseph Burnett Company was composed of the defendants Robert M. Burnett and Harry Burnett as surviving partners, who became the corporation's president and treasurer, respectively, and a majority of its board of directors and the holders of a large part of the capital stock.   The capital stock of the corporation was issued to be used "in the purchase from the surviving partners of Joseph Burnett and Company (with the assent and ratification of the executors of Joseph Burnett, deceased) all of the merchandise, machinery, fittings, good will, proprietary property, trade marks, processes, secrets, cash, accounts receivable, claims and all other assets whatsoever of said firm.   The corporation to assume all contracts and debts of said copartnership, and take over the business as from and after August 11, 1894, and to ratify all acts, and payments, and to bear all losses and to hold all profits since that time."

The plaintiff alleged on information and belief that some time about the year 1889 the plaintiff's testator and the copartnership Joseph Burnett and Company (then composed of Joseph Burnett, now deceased, and the respondents Harry Burnett and Robert M. Burnett) entered into a contract whereby the plaintiff's testator undertook and promised to devote his time, energy, skill, reputation, and special knowledge to experimentation in the subject of flavoring extracts, essences, coloring matters for food, and

perfumery, and similar things, for the mutual benefit of himself and said copartnership; and to permit the copartnership to make use of any of the processes, recipes or formulas he might thereafter invent, discover or improve. And the firm undertook and promised to manufacture and put on the market such of these processes to be invented, discovered or improved by the plaintiff's testator as they might believe capable of yielding a profit under proper business exploitation, and further promised to pay to him or his legal representatives a fair and equitable share of the net profits realized by the sales of flavoring extracts and coloring matters for foods manufactured under processes and formulas to be discovered by the plaintiff's testator; and, in consideration of certain other work which he was to do for said firm in connection with their established manufacture under their own recipes and to enable him to carry on his experimentation until such time as the formulas to be devised by him might be put on the market and yield him a fair return, said firm agreed to and did pay the plaintiff's testator a small monthly sum.

Thereupon the plaintiff's testator " sold out and retired from a lucrative business as druggist and apothecary of which he had for many years been proprietor, gave up his established practice as consultant in pharmacy and food chemistry, and in accordance with the terms of the contract from about 1889 until September 24, 1896, when he died, devoted his whole time, skill, energy, knowledge and reputation to experimentation in flavoring extracts and essences, coloring matters for foods, and perfumery, and discovered, invented and improved from time to time a variety of new, valuable and useful processes for the production and manufacture of such flavoring extracts, essences, coloring matters for food stuffs and perfumery which were considered in the judgment of the defendants to be, and which in fact were, capable of profitable commercial exploitation, and the plaintiff's testator in every respect fulfilled, and was at all times ready to fulfil, all obligations undertaken by him in consequence of said agreement."

In pursuance of the objects for which it was incorporated and with full knowledge of the agreement of the plaintiff's testator with the firm and of all his rights in the processes and secrets

invented, discovered and improved by him, the defendant Joseph Burnett Company acquired from the defendants Robert M. and Harry Burnett, as surviving partners of Joseph Burnett and Company and with the assent and ratification of the executors of the will of Joseph Burnett, all their proprietary property, trademarks, processes and secrets, including those for flavoring extracts and essences, coloring matters for food stuffs, and perfumery discovered, invented and improved by the plaintiff's testator, and succeeded to the rights and assumed all the obligations and liabilities under the agreement between the plaintiff's testator and the firm.

On information and belief the plaintiff further alleged that, shortly after the making of the agreement with the plaintiff's testator, the copartnership, and on and after August 11, 1894, the corporation, began to use, and continued to use down to the institution of this suit, a large number of secret processes and formulas discovered and invented by the plaintiff's testator, and by means thereof to manufacture and sell flavoring extracts, essences, and coloring matters for food stuffs, and perfumery, continuously had been engaged extensively in the manufacture and sale of said products, and had made large profits thereby, and still had the exclusive use and benefit of certain of said secret processes and formulas; that such flavoring extracts, essences and coloring matters for food manufactured under the processes and formulas discovered, invented and improved by the plaintiff's testator began to be widely marketed and to yield a large profit over the cost of production before his death, but that the defendants failed to disclose, concealed from the plaintiff's testator and his executor and denied the fact that any profit whatever had been realized; that because of the representations of the defendants the plaintiff's testator died ignorant of the fact that the products were being marketed at a profit and without having received from the defendants the share, or any part of the share, of such profits which ought to have been paid to him in accordance with said agreement.

After the death of the plaintiff's testator, the executor of his will requested that the defendants account for his share of the net profits due him and his estate, but the defendants denied that there were any profits.

Shortly after his appointment as administrator the plaintiff requested the defendant Harry Burnett, as treasurer of the defendant corporation and as a surviving partner of the firm of Joseph Burnett and Company, to account to him for net profits due the estate of the plaintiff's testator, but he, in behalf of the defendant corporation and the copartnership, though admitting that such profits had been made, refused to pay over any sum as profits or to make any accounting whatever.

On information and belief the plaintiff further alleged that neither George F. H. Markoe nor the executor of his will nor any person interested in the testator's estate ever was informed or believed or had reason to apprehend that the defendants denied or intended to deny their obligations under their agreement with the said Markoe; and that neither the plaintiff nor any of the above named persons learned that the defendants intended to deny said obligations until their refusal to account as above stated. Soon after the death of the plaintiff's testator the defendant Harry Burnett was appointed trustee of the residue of his estate, which was given by his will upon certain trusts, and continued to act as such trustee until July 16, 1908, when he resigned the office. Throughout the time of his trusteeship he acted as advisor to the executor of said will, and after the year 1900, when the executor went to live permanently in New York, and until the appointment of the plaintiff as administrator, Harry Burnett assumed and exercised full control over the administration of the estate.

On information and belief the plaintiff further alleged that the flavoring extracts, essences, coloring matters and perfumery manufactured under the processes, recipes and formulas discovered and invented by the plaintiff's testator were placed upon the market by the defendants some time before his death; that they yielded a profit before his death; that the sales thereof had greatly increased since his death; and that all such articles have been sold in very large and increasing quantities throughout the United States and other countries, and have yielded to the defendants from time to time, and still are yielding, very extensive profits over and above the cost of production; that an accounting would be an extremely complicated and difficult matter, and the common law for that and for other reasons

would afford the plaintiff no adequate and complete relief in the premises.

The prayers of the bill were for an accounting, for injunctions restraining the defendants from selling, assigning, transferring, disposing of or making known to any person, firm or corporation the processes, recipes and formulas discovered or invented by the plaintiff's testator and previously described; that the right, title and interest of the plaintiff in the recipes, formulas and processes might be ascertained and established, and that the defendant corporation might be decreed to hold the same in trust for the plaintiff as administrator to the extent of his interest therein, or that the value thereof might be ascertained and established and ordered to be paid over to him; and for general relief.

The individual defendants and the defendant corporation demurred severally upon the ground that the bill disclosed no ground for proceedings in equity, and also on the ground that the bill was multifarious, " in that it proceeds and relies upon two separate and distinct grounds of relief against separate and distinct defendants, namely, it proceeds and asks relief against these defendants upon an alleged agreement with them as copartners, and it proceeds and asks relief against the Joseph Burnett Company upon an alleged contract between these defendants and said company, of which the plaintiff may be a beneficiary, but to which neither he nor his testator were parties."

The demurrers were heard by *Sheldon*, J., who overruled them, and, being of opinion that the questions involved so affected the merits of the controversy that the matters ought, before further proceedings, to be determined by the full court, he reported the questions raised by the demurrers for that purpose and stayed all further proceedings.

*J. Noble,* (*H. M. Channing & F. R. Boyd* with him,) for the plaintiff.

*C. F. Choate, Jr.,* for the defendants.

HAMMOND, J.    Under the original contract with Joseph Burnett and Company, Markoe was to devote his time and skill to produce formulas of the kind therein specified, " for the mutual benefit of himself and said copartnership," and to permit the firm to make use of the formulas for manufacturing purposes.

And the firm was to manufacture and put upon the market such compounds made in accordance with any of these formulas as they believed capable of yielding a profit, and to pay Markoe "a fair and equitable share of the net profits." The bill alleges that an accounting would be an extremely complicated and difficult matter, and that the common law for that and other reasons would afford no adequate and complete relief. Under these circumstances it is manifest that if the plaintiff is entitled to any portion of the net profits, equity has jurisdiction at least against the defendants, who are the surviving partners of the old firm of Joseph Burnett and Company ; and this is so, irrespective of the question whether or not under the agreement the contracting parties became partners. *Pratt* v. *Tuttle*, 136 Mass. 233, and cases cited. *Hallett* v. *Cumston*, 110 Mass. 32.

But it is contended by the defendants that the agreement is too indefinite to be enforced. In support of this contention they argue that what is a fair and equitable share of the net profits cannot be determined and hence the plaintiff can have nothing. The allegations of the bill show that this work was done by Markoe not gratuitously, but under a promise to receive a portion of the proceeds. The work has been done and the bill alleges that great profits have accrued, and the only thing to be done is for the defendants to pay over a fair and equitable share thereof. The plaintiff does not call upon the court to state the rule in accordance with which the profits already obtained and now in the hands of the defendants shall be divided. The contract itself states the rule — a fair and equitable share. The plaintiff simply asks that this rule shall be applied not to future probabilities but to past facts. There is nothing to show that the rule is so indefinite or that its application is so impracticable that it cannot be applied with reasonable certainty to the circumstances under which the profits were made. See *McMurtrie* v. *Guiler*, 183 Mass. 451, 454. The case is clearly distinguishable from *Marble* v. *Standard Oil Co.* 169 Mass. 553. And the same may be said of *Fairplay School Township* v. *O'Neal*, 127 Ind. 95; *Des Moines* v. *Des Moines Waterworks Co.* 95 Iowa, 348; *Faulkner* v. *Des Moines Drug Co.* 117 Iowa, 120 ; and *Pulliam* v. *Schimpf*, 109 Ala. 179; all of which are cited by the defendants.

It is next contended in support to the demurrer that in no

event can the defendant corporation be held.    In support of
this it is urged that the bill does not set forth any contract be-
tween Markoe and the corporation, that in this Commonwealth
the beneficiary of a contract cannot sue the obligor at law or in
equity, that there has been no novation, and " no new considera-
tion for any new contract with the corporation," and further that
none of these processes was  patented, that they were all merely
trade secrets and that, if the owner of a trade secret divulges it
without imposing restrictions against its divulgence by his con-
fidant to another, any one who through the confidant or otherwise
gets knowledge of the secret can do with it as he chooses.

We do not understand the plaintiff to put his case upon the
doctrine of a new contract.    The bill sets out that these formu-
las were for the mutual benefit of Markoe and the old firm, and
that he was to permit the firm to make use of them.    There is
no allegation that they were the property of the firm, but the
whole framework of the bill is that the property in the formulas
remained in part at least in the plaintiff, and moreover that the
formulas were to be regarded as trade secrets.    The firm had the
possession of the formulas for a limited purpose only, and could
not properly as against Markoe divulge them.    To divulge them
was a breach of trust.    The corporation was not a purchaser
without notice.    Its officers and organizers were members of the
firm, and they held  nearly all the stock.    Their knowledge was
the knowledge of the corporation.    They knew Markoe's rights
and the limitation of their own rights.    With full knowledge of
these rights and limitations the corporation took  the formulas
and used them.    In other words it received, with full knowledge
that the conveyance from the old firm was a breach of trust, the
formulas.    Under these circumstances it must be held to hold the
formulas on the same trust as that on which they had been held
by the old firm.    See *Loring* v. *Brodie*, 134 Mass. 453, and cases
cited.    Nor is there anything inconsistent with this in *Pratt* v.
*Tuttle*, 136 Mass. 233, upon which the defendants rely.    In that
case the corporation was the mere agent of the original  con-
tractors, nor was it  charged that the corporation had  profits in
its hand in which the plaintiffs had an interest.    In the present
case it is alleged that the corporation as the purchaser from the
firm has used the formulas and has profits in its hands.

The bill is not multifarious.  The fundamental question respects the interest of Markoe in the formulas, and in this question all the defendants are directly interested.  That is the trunk, of which the respective liabilities of the corporation and the other defendants are the separate branches.  " It is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each party has an interest in some material matters in the suit, and they are connected with the others."  *Brown* v. *Guarantee Trust & Safe Deposit Co.* 128 U. S. 403, 412, and cases cited.  *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461, and cases cited.

The orders overruling the demurrers are affirmed; and in accordance with the terms of the report the defendants are to plead or answer.

*So ordered.*