Charles H. WOOD, Appellant,

v.

JAMES B. NUTTER & COMPANY, a Corporation, Respondent.

No. 52407.

Supreme Court of Missouri, Division No. 2.

July 10, 1967.

John J. Alder, Alder, Morrison & Rixner, Kansas City, for appellant.

Frank P. Sebree, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, for respondent.

DONNELLY, Judge.

This is an appeal by plaintiff Charles H. Wood from a summary judgment entered on his cause of action which is based upon breach of an alleged oral employment contract.

■ The record on appeal consists of pleadings, interrogatories, depositions, exhibits, and affidavits. Plaintiff contends the trial court erred in entering summary judgment because substantial, material issues of fact remain in the case and defendant is not shown "by unassailable proof to be entitled thereto as a matter of law." S.Ct. Rule 74.04(h), V.A.M.R.; Maddock v. Lewis, Mo.Sup., 386 S.W.2d 406, 408–409 [1]. We "view the record on summary judgment in the light most favorable to the party against whom the judgment is rendered." Cooper v. Finke, Mo.Sup., 376 S.W.2d 225, 228 [2].

According to plaintiff's evidence: Plaintiff is an accountant specializing in mortgage servicing and accounting. Defendant is a mortgage loan broker. In December, 1960, plaintiff discussed employment with two officers of defendant. They entered into an oral employment agreement whereby plaintiff agreed to install his systems of mortgage servicing and accounting and defendant agreed to pay him $600 per month plus "one-third of the net profit of James B. Nutter and Company, derived from its servicing operation."

Defendant describes its whole operation as follows: "The defendant James B. Nutter and Company is a mortgage loan broker making loans to persons mostly on the security of single-family residences. Defendant in turn sells the loans to permanent investors such as savings and loan associations, insurance companies and savings banks. Defendant's income comes from four sources:

"(a) Loan Commissions. A loan commission is paid to defendant by someone purchasing a house so that the purchaser

can obtain a real estate loan from defendant.

"(b) Loan Discounts. A loan discount is paid to defendant by the seller of the house in order to induce defendant to make the loan to the purchaser. This discount is offset, at least in part, by the discount which defendant has to pay to the permanent investor when defendant sells the loan to the permanent investor.

"(c) Interest Income. Interest on each loan made by defendant is received by defendant during the time that it owns the loan (that is to say, between the time defendant makes the loan and the time the loan is sold to a permanent investor). This interest income is offset in part by the interest expense which defendant pays to commercial banks in order to obtain money to make the loan.

"(d) Servicing Fees. Defendant receives servicing fees paid monthly by permanent investors in all cases where defendant handles the collection and servicing of the loan after the permanent investor has purchased it.

"The servicing of a loan includes the collection of the proceeds of a loan, the remitting of the proceeds of the loan to the investor who owns it, the taking of steps to protect the loan and the real estate that secures it, the collection and escrow of money for taxes and insurance, and the paying of the taxes and insurance premiums on real estate as they come due."

Plaintiff started to work December 7, 1960, and shortly thereafter became Treasurer of the company. He terminated his employment January 8, 1965. He filed suit March 19, 1965.

Defendant first contends the trial court properly entered summary judgment "because the oral agreement which plaintiff claims to have entered into with defendant is too vague, indefinite and uncertain to be enforced." Plaintiff testified in his deposition that when the oral agreement was made he and defendant's officers did not discuss "how the question of servicing profit was going to be arrived at." He also made several admissions indicating an inability to calculate net profits from defendant's servicing operation. According to the employment agreement, plaintiff was to be paid one-third of the net profit derived from the servicing operation, which is but one of four sources of defendant's income. Plaintiff's problem arose when he was asked to allocate defendant's expenses between the servicing operation and the other three operations of the company in order to determine the net profit of the servicing operation. His problem became more pronounced when, on January 25, 1966, defendant filed a motion to stay all discovery on the part of plaintiff and the motion was, on February 9, 1966, sustained by the trial court. (See S.Ct. Rule 58.01, V. A.M.R.)

On May 26, 1966, defendant filed its Motion for Summary Judgment with supporting affidavits. Thereafter, plaintiff filed his suggestions in opposition. Attached thereto is an affidavit, personally sworn to by plaintiff, in which he makes the following statements:

"3. He was and is personally familiar with the keeping of the records, the approximate time consumed by various employees, their pay, the cost of managing and operating the department and that if given an opportunity to examine the books of the company personally and with the possible assistance of others, within two to four weeks he could arrive at a fair and reasonable amount of money or profit that was made by his operation of the servicing department for the years in question.

"4. At no time has he said nor believed that it was wholly impossible to reach or compose such figures, but only that he could not do it without the aid of company records and books; he did give to defendant a formula, attached as Exhibit A, which defendant has rejected without excuse or reason as being improper."

\* \* \* \* \* \*

"9. Regardless of the calculations or recitation of income in defendant's affidavit, the measure of profit in the servicing department arises not from the net income to the defendant corporation for all its operations, but from the savings in salaries, space, handling costs of defendant's operations in the servicing department; thus, plaintiff verily believes that the records of defendant-company will show that when plaintiff first began working for company for defendant, the gross volume of mortgages handled was approximately $2,-000,000, and at the termination of his association with defendant was approximately $23,000,000 all of which was done with virtually no increase in help or other fixed costs to the very great advantage of defendant in its overall operations."

Plaintiff's affidavit shows that genuine issues as to material facts remain in the case unless the employment contract is unenforceable as a matter of law. The following comments are made in Annotation, 18 A.L.R.2d 211, at page 213: "The authorities make it clear that the question of whether a profit-sharing agreement, uncertain in that it fails to set forth the extent of the employee's share, is sufficiently definite to bind the employer is not susceptible to rule-of-thumb solution. On the contrary, although the courts uniformly recite the rule that contracts must be definite, the compliance or noncompliance with this rule by an individual promise by an employer to share profits with his employee is most often, if not always, determined from a consideration of all surrounding facts and circumstances. And the courts have shown a tendency to grant recovery, if that can possibly be done, to an employee who has proved the making of the profit-sharing promise and who has acted in reliance thereon." See also Brunner v. Stix, Baer & Fuller Co., 352 Mo. 1225, 181 S.W.2d 643; Allan v. Hargadine-McKittrick Dry Goods Co., 315 Mo. 254, 286 S.W. 16; and Cygan v. Megathlin, 326 Mass. 732, 96 N. E.2d 702.

The following language of Cardozo, J., in his dissenting opinion in Varney v. Ditmars, 217 N.Y. 223, 111 N.E. 822, 826, though not directed to the propriety of summary judgment, is appropriate: "I do not think it is true that a promise to pay an employé a fair share of the profits in addition to his salary is always and of necessity too vague to be enforced. Noble v. Joseph Burnett Co., 208 Mass. 75, 94 N.E. 289; Silver v. Graves, 210 Mass. 26, 95 N.E. 948; Brennan v. Employers' Liability Assurance Corp., Ltd., 213 Mass. 365, 100 N.E. 633; Joy v. City of St. Louis, 138 U.S. 1, 43, 11 Sup.Ct. 243, 34 L.Ed. 843. The promise must, of course, appear to have been made with contractual intent. Henderson Bridge Co. v. McGrath, 134 U.S. 260, 275, 10 Sup.Ct. 730, 33 L.Ed. 934. But if that intent is present, it cannot be said from the mere form of the promise that the estimate of the reward is inherently impossible. The data essential to measurement may be lacking in the particular instance, and yet they may conceivably be supplied. It is possible, for example, that in some occupations an employé would be able to prove a percentage regulated by custom. The difficulty in this case is not so much in the contract as in the evidence."

■ It is well settled in Missouri that summary judgment may not be substituted for a trial of factual issues "unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." Cooper v. Finke, supra, 376 S.W.2d 1. c. 229. "The difficulty in [plaintiff's] case is not so much in the contract as in the evidence." It may be that plaintiff will be unable to prove his case at the trial. However, we cannot hold on the record before us that the oral agreement of employment is unenforceable as a matter of law.

■ Defendant finally contends the trial court properly entered summary judgment "because plaintiff, for four years, continued in the employ of defendant accepting, without complaint or objection, the

raises and bonuses that defendant paid him and plaintiff is therefore estopped from asserting, now, that defendant owes him additional compensation."

The defense of estoppel was not raised by defendant in its answer, nor in its motion for summary judgment, nor in the affidavits and suggestions attached thereto. Plaintiff had no opportunity in the trial court to rebut it. It is first raised on appeal. We will not consider it.

The judgment is reversed and the cause remanded.

All of the Judges concur.