MICHAEL CHEVROLET, INC. *vs.* INSTITUTION FOR SAVINGS
IN ROXBURY AND ITS VICINITY.

Suffolk.    March 4, 1947. — April 5, 1947.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Contract*, Consideration, For lease, Validity. *Frauds, Statute of. Landlord and Tenant*, Extension of lease, Tenancy at will, Termination of tenancy.

An oral statement made by a lessor to the lessee during the term of the lease, that the lessor "would go along with" the lessee while he was away in the armed forces and would "do all . . . [he] could to protect" the interests of the lessee, and that on the return of the lessee from service a new lease would be made "satisfactory as well as profitable" to both parties, to which the lessee replied expressing appreciation but not binding himself in any way, did not constitute an extension of the lease; and, because of lack of consideration, indefiniteness, and want of a memorandum to satisfy the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fourth, did not create an enforceable contract to give a new lease.

A letter from a lessor to the lessee proposing that the lessee become a tenant at will upon expiration of the lease, even if it also proposed that such tenancy should continue until a definite subsequent time, would not create a term or amount to a promise to grant a term, since there cannot be a tenancy at will for a term.

A tenancy at will of business property was terminated by the making of a lease of the property between the landlord and a third person, notwithstanding a recital in the lease that it was "given subject to the occupancy of the present tenant"; that recital meant only that the burden of securing possession was upon the lessee.

CONTRACT OR TORT. Writ in the Superior Court dated January 2, 1945.

The action was tried before *Donahue,* J.

*P. B. Buzzell,* for the plaintiff.

*A. S. Allen,* for the defendant.

QUA, J. This is an action in contract or tort to recover for breach of an alleged promise by the defendant to extend a lease beyond its term or for alleged eviction of the plaintiff from the leased premises, which were located on Linden Street in Wellesley and were occupied by the plaintiff as a garage. A verdict was directed for the defendant. The plaintiff's exceptions bring the case here.

By lease in writing dated October 1, 1941, the defendant demised the premises to the plaintiff for the term of one year from that date at a rental of $200 a month. One Michael was the president and treasurer of the plaintiff and owned all of its stock. His authority to act for the plaintiff seems to have been assumed by both parties. Shortly after April 10, 1942, Michael, having received notice to report for duty in the armed services, called at the office of the defendant's president, one Gladwin, who "was responsible for the running of the bank." Michael testified that at the interview which then took place he told Gladwin that he had been ordered into the armed forces; that he had called to see what concession, if any, "they" could offer to assist in carrying on the business during the period of the war and during the witness's absence; and that it was his duty to endeavor to operate a service department for the period of the war to serve his customers and to keep his name before the public. According to the witness, Gladwin said "that the bank would go along with me [Michael] while I was in the service, do all they could to protect my interests, and on my return a new lease would be drawn, a new arrangement made, which would be satisfactory as well as profitable to both the bank and" the plaintiff. The witness further testified that "it was agreed to reduce the rent from two hundred to one hundred and twenty-five dollars a month," and that Michael expressed his appreciation for the "consideration" the bank had shown him. Thereafter Michael ar-

ranged for the operation of the garage on a reduced basis and went into the service. The rent was paid promptly at the reduced rate.

So far as appears nothing further occurred in relation to the tenancy until August 5, 1942, when Michael wrote the defendant that the garage was operating at a loss and that it would be necessary further to curtail expenses, and requested a further reduction in the rent. On August 15, about six weeks before the end of the term of the then existing lease, the defendant, through Gladwin, replied, saying, "whether it is best for us to make another lease for the coming year or not is a question, and perhaps it may be well for us to continue having you as a tenant at will, if that is satisfactory to you. If we make the rent $100 a month from September 1, 1942, until such time as it will appear that the war will soon be over and you will be released from your duties in the service, then we will take up the matter again." After expressing a wish to be fair, Gladwin continued, "I am wondering if you will not consider our proposition to be fair under the existing circumstances." Michael answered this letter under date of August 23, expressing his appreciation of the consideration given him and saying, "It will be satisfactory to me to be a tenant at will pending better conditions, which we hope will not be in the far distant future."

The plaintiff continued to pay rent at $100 a month, and nothing further occurred until March 3, 1943, when the defendant wrote to Michael that it had an offer by responsible parties of $150 a month, with the prospect of a later increase. Some inconclusive correspondence followed. Finally, under date of May 5, 1943, the defendant leased the premises to a third person for one year beginning June 1, 1943, with an option to purchase. This lease was expressed to be "given subject to the occupancy of the present tenant." On May 11 the defendant wrote the plaintiff that it had given this lease. When the new tenant took possession does not clearly appear, but it could have been found that this occurred about June 1, 1943. Nothing appears as to what happened when possession was taken. Apparently the breach of contract complained of is the giving of the new lease, and the eviction

complained of is the taking of possession by the new tenant.

The plaintiff had no rights, either of contract or of property, which survived the delivery of the new lease. The oral conversation between Michael and Gladwin in April, 1942, could not be found to have amounted either to a modification and extension of the then existing lease or to an enforceable agreement to make a new lease. Gladwin's statements that the bank "would go along with me while I was in the service" and "do all they could to protect my interests" could not be given the effect of extending by parol at the reduced rental the lease which was about to expire for as long a time as Michael should remain in the service, however long that might be. The plaintiff did not bind itself in any way to anything and remained free to vacate at the end of the term. It therefore gave no consideration for any extension. *Torrey* v. *Adams*, 254 Mass. 22, 26–28. *Fienberg* v. *Adelman*, 260 Mass. 143. *Bailey* v. *First Realty Co.* 305 Mass. 306, 309. Compare *Conroy* v. *Toomay*, 234 Mass. 384, *S. C.* 255 Mass. 87; *Tashjian* v. *Karp*, 277 Mass. 42, 46; *Cohen* v. *Homonoff*, 311 Mass. 374. But even if an oral contract purporting to extend the existing term could be extracted from this conversation, the lessee's extended estate would be an "estate or interest in land created without an instrument in writing signed by the grantor or by his attorney" and would therefore "have the force and effect of an estate at will only." G. L. (Ter. Ed.) c. 183, § 3. *Freedman* v. *Gordon*, 220 Mass. 324. *Snider* v. *Deban*, 249 Mass. 59, 62. See *Emery* v. *Boston Terminal Co.* 178 Mass. 172, 182–183. The oral conversation created no enforceable contract to give a new lease. One reason for this is the lack of consideration already mentioned. Further reasons are that an agreement to make a lease described only as one that will be "satisfactory" and "profitable" to both parties is too indefinite for enforcement (*Hampden Railroad* v. *Boston & Maine Railroad*, 233 Mass. 411, 417; *Kaufman* v. *Lennox*, 265 Mass. 487; *Young* v. *Titcomb*, 268 Mass. 14; Restatement: Contracts, § 32), and that there was no memorandum in writing to satisfy the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fourth.

*Flanagan* v. *Welch*, 220 Mass. 186, 189. *Snider* v. *Deban*, 249 Mass. 59, 62.

The subsequent letters remain to be considered. If the defendant's letter of August 15, 1942, really contained any "proposition" at all, it was at most a proposition that the plaintiff become a tenant at will at $100 a month upon the expiration of the then existing lease, with a promise to "take up the matter again" when it should "appear" that the war would "soon be over" and that Michael would be released from his duties in the service. Whatever this last mentioned promise might mean, neither that nor the entire conditional sentence in which it occurs, including the clause introduced by the word "until," could create a term, or amount to a promise to grant a term, that should last until it should "appear" that the war would "soon be over" and that Michael would be released from the service; since, if it is ever possible to have a term on any such indefinite basis (see *Murray* v. *Cherrington*, 99 Mass. 229; *Berman* v. *Shaheen*, 273 Mass. 343; *Wunsch* v. *Donnelly*, 302 Mass. 286, 288), such a term would be entirely inconsistent with the proposed tenancy at will. There cannot be a tenancy at will for a term, even if there can be one that shall not extend beyond a fixed date. *Hollis* v. *Pool*, 3 Met. 350. *Elliott* v. *Stone*, 1 Gray, 571, 574. *Davis* v. *Murphy*, 126 Mass. 143, 145. *Foley* v. *Gamester*, 271 Mass. 55, 57. *Adjmi* v. *Ginter Restaurant Co.* 291 Mass. 224, 225–226. Moreover the plaintiff through Michael's reply of August 23, 1942, agreed only to become a tenant at will. It did not agree to accept a term, even if a term was offered.

From whatever angle the evidence is viewed, it would not warrant a finding that after the expiration of the 1941 lease on September 30, 1942, the plaintiff had any contract right to a term, or any property right in the premises greater than that of a tenant at will. Under a familiar principle of law the plaintiff's tenancy at will was ended June 1, 1943, by the defendant's grant of a new lease to a third person to take effect on that day. *Kelly* v. *Waite*, 12 Met. 300. *Howard* v. *Merriam*, 5 Cush. 563. *Mentzer* v. *Hudson Savings Bank*, 197 Mass. 325, 330–331. *Swift* v. *Boyd*, 202

Mass. 26, 28. *Souza* v. *Becker*, 302 Mass. 28, 30. *Ferrigno* v. *O'Connell*, 315 Mass. 536, and cases cited. Compare G. L. (Ter. Ed.) c. 186, § 13, applicable where the premises are occupied for dwelling purposes. The provision in the new lease that it was "given subject to the occupancy of the present tenant" did not preserve the plaintiff's tenancy at will. The only effect of those words was to make it clear that the burden of securing possession was upon the new lessee.

We have not found it necesary to consider whether in any event the defendant did anything that amounted to an actual or constructive eviction. See *Royce* v. *Guggenheim*, 106 Mass. 201; *Stone* v. *Sullivan*, 300 Mass. 450, 455; *Westland Housing Corp.* v. *Scott*, 312 Mass. 375, 381.

There is nothing in *Berman* v. *Rowell*, 274 Mass. 260, cited by the plaintiff, contrary to what is here decided.

The plaintiff has argued exceptions to the exclusion of certain evidence. We do not discuss them, since this evidence, if admitted, would have made no change in the basis on which this opinion rests.

On the record before us the defendant acted within its rights and broke no contract and committed no tort.

*Exceptions overruled.*