HENRY F. CYGAN vs. EARLE MEGATHLIN & another.

Bristol. October 23, 1950. — February 5, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Contract,* Of employment, Construction, Validity.

An oral contract between a tool maker and the proprietors of a new manufacturing business having limited financial means, whereby the tool maker was to produce tools for the business and, if his charges were reasonable, was to receive for his services initially a stated sum per hour, which was in fact substantially less than the fair and reasonable hourly rate, and subsequently some additional compensation when the proprietors "got on their feet," meant that upon the tool maker's performing the services and the business becoming successful he was to receive compensation in addition to the stated hourly sum sufficient to give him in the aggregate fair compensation for his services; the contract was not invalid for indefiniteness.

BILL IN EQUITY, filed in the Superior Court on June 18, 1948.

The suit was heard on a master's reports by *Forte,* J.

*E. D. Hicks,* (*W. B. Perry, Jr.,* with him,) for the plaintiff.

*J. Lipsitt,* for the defendants.

RONAN, J. This is a suit in equity to recover compensation for services rendered to the defendants. The judge construed the oral agreement of employment, in so far as it referred to any compensation in addition to $1 an hour, as too indefinite to be enforced, confirmed the master's reports as so construed, and entered a final decree for the plaintiff in the amount of $981.31, which was computed at the rate of $1 an hour, less payments made by the defendants, plus interest. The plaintiff appealed from the interlocutory and final decrees.

It appears from the master's reports that the defendants in the early part of 1946 were desirous of manufacturing marine hardware parts. They had limited financial means and desired to avoid paying a high cost for tool making.

They made an oral agreement on or about April 15, 1946, with the plaintiff, an experienced tool maker, by which he was to produce the tools in the cellar of his home, using his own hand tools and other equipment located therein, together with the materials, light, power, and other equipment to be furnished by the defendants. The plaintiff was to do this work outside of the time he was regularly employed in another plant. With reference to the matter of compensation, the master reported that the parties entered into an oral contract whereby the plaintiff undertook to perform services with the understanding that, if his charges for tool making were reasonable, he was to receive initially $1 an hour and some additional compensation at a later date when the defendants "got on their feet." The exact nature and amount of this additional compensation were not agreed upon at the inception of the contract or at any time thereafter, although the parties before the termination of the plaintiff's services in February, 1948, and when the defendants were able to pay, attempted unsuccessfully to fix the amount of the additional compensation. The master found that the fair and reasonable rate for the plaintiff's services was $2 an hour, and upon this basis he found for the plaintiff for $2,573.35 together with interest.

The master found against the plaintiff on his original contention that he was to be paid the additional compensation in the capital stock of the new company which the defendants incorporated. The bill, however, is one to establish an indebtedness and to reach and apply shares of stock owned by the defendants and the suit was tried before the master, without objection, as a common count to recover for services rendered. The defendants raise no question of variance. The question presented is whether the oral contract of employment is so vague and indefinite that the plaintiff is not entitled to recover any compensation in excess of $1 an hour.

All the essential terms of a contract must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained,

and their rights determined. *Read* v. *McKeague*, 252 Mass. 162. *Thall* v. *Berkowitz*, 265 Mass. 335. *Geo. W. Wilcox, Inc.* v. *Shell Eastern Petroleum Products, Inc.* 283 Mass. 383, 390. *Michael Chevrolet, Inc.* v. *Institution for Savings,* 321 Mass. 215, 218.

A contract is not to be struck down because one of its material provisions is stated in broad and general terms if, when applied to the transaction and construed in the light of the attending circumstances, the meaning to be attributed to it can be interpreted with reasonable certainty so that the rights and obligations of the parties can be fixed and determined. This court has gone far in enforcing contracts where the consideration to be paid by one party to the other was expressed as a fair and equitable share of the profits, *Noble* v. *Joseph Burnett Co.* 208 Mass. 75; to pay a sum which would be right and satisfactory, *Silver* v. *Graves*, 210 Mass. 26; to "make it right" with an injured employee by the payment of some compensation in addition to the sum paid for a release, *Brennan* v. *Employers Liability Assurance Corp. Ltd.* 213 Mass. 365, or to treat him right by the payment of some additional compensation until he was able to return to work, *Ferris* v. *Boston & Maine Railroad*, 291 Mass. 529; to pay an employee well and to satisfy him, *Leverone* v. *Leverone*, 220 Mass. 149; or to pay for services the value of which was to be left to future determination, *Evers* v. *Gilfoil*, 247 Mass. 219, *Weiner* v. *Pictorial Paper Package Corp.* 303 Mass. 123. See *Greene* v. *Boston Safe Deposit & Trust Co.* 255 Mass. 519, 524; *Fenton* v. *Federal Street Building Trust*, 310 Mass. 609; *Eno* v. *Prime Manuf. Co.* 314 Mass. 686, 691.

The defendants agreed to pay additional compensation if and when their business became sufficiently profitable to permit it and if the charges to be submitted by the plaintiff were fair and reasonable. The question is whether the contract carries with it, either expressly or impliedly, the measure of compensation. The defendants were embarking upon a new venture for which it would be necessary to have a supply of tools, but their finances were too meager at the

beginning of the venture to pay the usual and regular prices for the tools. They secured a tool maker to produce the tools in his spare time and agreed to pay at a rate which in fact was one half the ordinary rate for his services and something in addition if the venture became successful and his charges were reasonable. The tool maker took the risk that he might not eventually receive any more than the initial rate because the business might not prove to be successful, but if it turned out to be profitable he was to be paid such an additional amount as would give him a reasonable compensation for the services which he had rendered. A reference in the agreement to the reasonableness of the charges to be submitted by the plaintiff is significant and is plainly indicative that the parties had in mind that the measure of compensation was to be fair and reasonable. A promise to pay for services if the charges therefor are reasonable is equivalent to a promise to pay fair compensation. The whole arrangement was for the benefit of the defendants in that it postponed the payment of fair and reasonable compensation until they "got on their feet."

The plaintiff is not seeking damages for breach of an executory contract but is seeking to recover reasonable compensation for services which he rendered at the request of the defendants and for their benefit, and for which he was to be paid in addition to that actually received under certain conditions with which there was a compliance. It was said in *Silver* v. *Graves,* 210 Mass. 26, 30, where the only element in the contract left undetermined was that of price, that "When a contract has been executed on one side, the law will not permit the injustice of the other party retaining the benefit without paying unless compelled by some inexorable rule." We do not think that the promise to pay additional compensation was void on the ground that it was too indefinite. There are instances where recovery was allowed even where the promise was held to be too indefinite. In *Von Reitzenstein* v. *Tomlinson,* 249 N. Y. 60, where the promise to pay "an appropriate percentage" of the benefit derived from the plaintiff's services in addition to a fixed

daily wage was held to be too indefinite to be enforced, it was said by Cardozo, Ch.J., at pages 64–65, "It is, however, significant as rebutting an agreement that value was liquidated by the liquidation of the daily wage. As to what the work was worth, the door is still wide open. Whatever it was worth in excess of payments made, the plaintiff should receive . . . . The case is to be disposed of as founded on a common count for service rendered at request." *Lorang* v. *Flathead Commercial Co.* 112 Mont. 146. Williston, Contracts (Rev. ed.) § 49. We need not decide here whether the plaintiff would be precluded from recovery for the fair value of the services rendered because the promise to pay was too indefinite to be enforced. Our own decisions already cited have gone far in permitting recovery for services rendered in accordance with a contract when it has been contended that the rate of payment fixed by the contract was too indefinite to be enforced. To them may be added *Pillois* v. *Billingsley*, 179 Fed. (2d) 205, *Hunter* v. *Ryan*, 109 Cal. App. 736, *Olson* v. *Shuler*, 203 Iowa, 518, *Brunner* v. *Stix, Baer & Fuller Co.* 352 Mo. 1225, *Plattenburg* v. *Briggs*, 166 App. Div. (N. Y.) 326, *Jeffs* v. *Stephenson*, 9 Wash. (2d) 335, Restatement: Contracts, § 32, illustration 10, Williston, Contracts (Rev. ed.) § 41, 92 A. L. R. 1391, and 6 R. C. L. 648–649.

The interlocutory decree confirming the reports of the master as modified by the findings and rulings of the judge is reversed. and a decree is to be entered confirming the reports. The final decree is reversed, and a final decree is to be entered ordering the defendants to pay the amount found due by the master.

*So ordered.*