GENEROSO CAGGIANO *vs.* ROCCO MARCHEGIANO.

Plymouth.   May 10, 1951. — July 2, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Contract,* Validity, Custom, Of employment, "Fighter-manager" contract. *Custom.*

A suit in equity could not be maintained for specific performance of a written contract providing merely that if the defendant, a boxer, should become a professional boxer he would "enter into a contract with . . . [the plaintiff] to retain the . . . [plaintiff] as his manager" where a custom supplying the essential terms of the contemplated "fighter-manager" contract was not proved and the contract sought to be enforced was therefore left too indefinite.

BILL IN EQUITY, filed in the Superior Court on August 25, 1948, and afterwards amended.

Following a decree overruling a demurrer to the bill, from which the defendant appealed, the suit was heard and reported by *Smith,* J.

*E. O. Proctor,* (*R. K. Lamere* with him,) for the defendant.

*Edward M. Sullivan,* (*W. J. Foley, Jr.,* with him,) for the plaintiff.

COUNIHAN, J. This is a suit in equity in which the plaintiff seeks specific performance of two alleged contracts, one written and one parol, injunctive relief, and an accounting. The suit is primarily predicated upon the following agree-

ment in writing: "Agreement made this twenty-seventh day of February, 1948, between Rocco Marchegiano, 168 Dover Street, Brockton, Massachusetts, and Generoso Caggiano, also known as Gene Caggiano, 797 Warren Avenue, Brockton, Massachusetts, as follows: In consideration of the time, efforts and teaching of Gene Caggiano to Rocco Marchegiano in the art of Boxing, the said Rocco Marchegiano agrees with Gene Caggiano that in the event the said Rocco Marchegiano should turn Professional and enter the professional field of Boxing within the next five (5) years, the said Rocco Marchegiano will enter into a contract with Gene Caggiano to retain the said Gene Caggiano as his Manager." It was signed under seal by both parties.

The allegation in an amendment of the bill of complaint relative to the parol contract is as follows: "On or about March 13, 1948, and March 22, 1948, the plaintiff and the defendant entered into a parol contract whereby the plaintiff agreed to manage the defendant as a professional pugilist for the period of five years or for such shorter period as the defendant should elect to remain a professional pugilist, and the defendant further agreed that during such period of time, he, the defendant, would not engage any other manager and the defendant further agreed that he would fight exclusively and solely under the management of the . . . plaintiff. It was agreed by the parties that the defendant pugilist's professional earnings during the term of the said contract, after the payment of all necessary expenses, should be divided between the parties on the basis of 66 2/3% to the pugilist, and 33 1/3% to the manager."

The original bill further alleges in substance that for a period of eighteen months prior to July, 1948, the plaintiff continuously instructed, trained, and managed the defendant in all of his amateur boxing matches; that on or about July 12, 1948, the defendant became a professional pugilist and has continued to be such but has refused to enter into a contract to retain the plaintiff as his manager in accordance with the written agreement; that the defendant has engaged others to manage him and under such management has en-

gaged in professional boxing matches, receiving substantial earnings therefrom, for which he has not accounted to the plaintiff; that the defendant is possessed of unique and unusual skill as a professional boxer; and that there was a fiduciary relationship between the plaintiff and the defendant because of said written agreement and the usage and custom referred to in the bill. An allegation as to custom and usage in the bill reads as follows: "Said agreement was entered into in contemplation of the established custom, general usage and habitual practice in the boxing profession in Massachusetts, which custom, practice and usage was known to and adopted by the parties, that (a) a managerial contract will last for a term of five years or for such shorter period as the pugilist shall elect to remain a professional fighter. (b) the manager shall have sole discretion in obtaining, selecting and arranging of any boxing bout, exhibition or other enterprise for his fighter, and in determining the financial arrangements for the fighter's purse in connection therewith, and in fixing the place and manner of training and travel and all details incidental thereto. (c) the pugilist shall so conduct himself during the period of the contract so as not to deteriorate his physical condition or injure his boxing ability. (d) the pugilist's professional earnings during the term of the contract, after the payment of all necessary expenses, shall be divided between the parties on the basis of 66 2/3% to the pugilist, and 33 1/3% to the manager. (e) all 'manager-fighter' contracts shall contemplate, engender and create a strict fiduciary relationship between the parties throughout the period of the contract."

In the prayers of the bill the plaintiff asks (1) that the defendant be ordered to comply with the terms of the agreement to retain the plaintiff as his manager on the basis set forth in the bill; (2) that the defendant be restrained from further conducting himself as a professional pugilist or retaining another as his manager contrary to the agreement; (3) and that the defendant be ordered to account to the plaintiff for all damages on account of the defendant's breach of contract.

A demurrer to the bill was overruled and the defendant appealed. Answers were filed to the bill and the amended bill.

After a hearing on the merits the judge made findings of material facts and rulings of law. He then reported the evidence and all questions of law for the consideration of this court. G. L. (Ter. Ed.) c. 214, § 31.

His findings of facts so far as pertinent are as follows: The plaintiff is thirty-seven years old and employed as a mechanic by the Eastern Massachusetts Street Railway Company. He is a former professional pugilist whose career ended in 1936 after he had engaged in about thirty contests. He then began to train amateur fighters and also promoted amateur boxing shows in Brockton and Buzzards Bay. The defendant is about twenty-seven years old. He first met the plaintiff about April, 1946, when, on furlough from the army, he engaged in one of the plaintiff's shows. On his return from the army he again met the plaintiff in January, 1947, and told him he wanted to begin training. This training continued, with but a slight interruption, until February, 1948, during which time the defendant received instructions and supervision from the plaintiff. During this period the defendant engaged in amateur boxing bouts in all of which the plaintiff was in his "corner."

Following conversations between them prior to and on February 27, 1948, the plaintiff and the defendant entered into the written agreement above referred to. After the execution of this agreement the defendant engaged in other boxing matches in which the plaintiff acted as his trainer and adviser. On two occasions before the signing of the agreement and twice after the signing of the agreement the defendant told the plaintiff in substance that the plaintiff was to be his manager for a five year period and that earnings after expenses would be divided two thirds to the defendant and one third to the plaintiff. About June, 1948, the defendant went to New York where he met one "Al" Weill, a manager of professional boxers. On July 12, 1948, he entered into an oral fighter-manager contract with Weill

which was later reduced to writing on October 8, 1948. Later Weill was superseded by other managers and under all of them the defendant engaged in twenty-three matches, the gross earnings of which were $29,624.04. There was no evidence as to the net profit.

"Forty-eight fighter-manager contracts filed in 1947–1948, from the files of the department of public safety, (being all that were filed during that period) showed the following:

| DURATION | DIVISION OF RECEIPTS | | | |
|---|---|---|---|---|
| 18 for 10 years | 44 — | Manager 33⅓% | Boxer | 66⅔% |
| 20 for  5 years | 2 — | "     25% | " | 75% |
| 6 for  3 years | 1 — | "     30% | " | 70% |
| 2 for  2 years | 1 — | "     40% | " | 60% |
| 1 for  7 years | | | | |
| 1 for  6 years" | | | | |

"There was further evidence that according to the usage in the business a *majority* of the fighter-manager contracts were of five years duration with a one-third–two-thirds division of the profits, the boxer getting the larger share. Both parties knew of this usage in February, 1948" (emphasis supplied).

The judge further found that the defendant's skill and ability as a pugilist are unique.

The judge made the following rulings: "I rule that the alleged contract (Exhibit 1) was based upon good and sufficient consideration. I rule that this agreement is not invalid for uncertainty and indefiniteness if, by resort to a usage current in the boxing business which was known to and contemplated by the parties, a contract should be executed between the parties, of five years duration, providing for a division of the net earnings on a basis of one third to the plaintiff and the balance to the defendant, with negative covenants requiring the defendant to accept the plaintiff as his manager." In the report he also stated: "However, apart from the questions of possible uncertainty, and indefiniteness, the case presents further questions of the enforcement of a contract for personal services of a unique

nature and the supervision thereof, the specific performance of an agreement for personal services of unique nature and an accounting."

Where we have a transcript of the evidence and a report of material facts, all questions of law, fact, and discretion are open to us. We can find facts for ourselves in addition to those found by the judge and, if satisfied that he was plainly wrong in making certain findings, we can find facts contrary to such findings made by him. *Gordon* v. *O'Brien,* 320 Mass. 739, 740. See *Kneeland* v. *Bernardi,* 317 Mass. 517, 518.

In his brief the plaintiff states that he agrees with the defendant's contention that it is essential to the existence of a contract that its nature and the extent of its obligations be certain. This rule has been long established. *Lyman* v. *Robinson,* 14 Allen, 242, 254. *Pray* v. *Clark,* 113 Mass. 283, 285. *Jamestown Portland Cement Corp.* v. *Bowles,* 228 Mass. 176, 180–181. *Conos* v. *Sullivan,* 250 Mass. 376, 378. *Knowles* v. *Griswold,* 252 Mass. 172, 175. *Geo. W. Wilcox, Inc.* v. *Shell Eastern Petroleum Products, Inc.* 283 Mass. 383, 390.

The plaintiff, however, argues that established custom, general usage, and habitual practice known to the parties and adopted by them permit the introduction of other terms into the written agreement so as to make it call for a contract for five years with earnings, after deducting expenses, to be divided one third to the plaintiff and two thirds to the defendant.

It is true that unexpressed terms may be introduced into a contract by virtue of usage and custom, but such usage and custom must be universal and uniform. "It is also as well settled, that to be admissible the usage not only must be universal but must have become notorious by the long and uniform practice of those engaged in the trade at the place where the contract is made." *Barrie* v. *Quinby,* 206 Mass. 259, 265. See *Scudder* v. *Bradbury,* 106 Mass. 422; *Haskins* v. *Warren,* 115 Mass. 514. The evidence as to usage and custom offered by the plaintiff here falls far short of these

essential requirements to afford the plaintiff relief.   There was evidence that according to the usage in the business a majority of the fighter-manager contracts were of five years duration with a one-third–two-thirds division of the profits, the boxer getting the larger share, but the evidence from the records of the department of public safety showed that less than a majority of fighter-manager contracts for the years 1947–1948 were for a term of five years duration. The record discloses no evidence of, and the judge made no finding of, any other facts established by universal usage or custom which the plaintiff himself alleged the parties knew of, adopted, and contemplated in the written agreement.

We agree with what was said in *Weiner* v. *Pictorial Paper Package Corp.* 303 Mass. 123, at page 131, "The courts . . . of Massachusetts, are slow to turn a plaintiff out of court for the reason that the promise given and relied on was. so vague that it can be given no effect.   To have that result, 'Indefiniteness must reach the point where construction becomes futile.'"   *Geo. W. Wilcox, Inc.* v. *Shell Eastern Petroleum Products, Inc.* 283 Mass. 383, 388.   We are of opinion that we must arrive at that result here.   If we discard the application of usage and custom here, as we believe we must because of lack of uniformity, there remains only a purported agreement to enter into a contract to manage the defendant, should he become a professional pugilist, which he did.

While it is true that an action may be brought upon a contract which contemplates another more formal contract, *Drummond* v. *Crane,* 159 Mass. 577, 579, an agreement to enter into a contract which leaves the terms of that contract for future negotiation is too indefinite to be enforced. Nowhere in this agreement are there set forth any terms as to the rights and obligations of either party.   The rights and duties of the plaintiff relative to his discretion in obtaining, selecting, and arranging for bouts, in determining the financial arrangements for the defendant's purse in connection therewith, in fixing the amount of legitimate expenses, and in deciding the place and manner of training and travel and

all other details incidental thereto are left to speculation. Such terms, however, the plaintiff alleges in his bill were in the contemplation of the parties to be incorporated by custom and usage in the future contract. He is bound by his allegations. "Pleadings shall not be evidence on the trial, but the allegations therein shall bind the party making them." G. L. (Ter. Ed.) c. 231, § 87. This section applies to equity cases. G. L. (Ter. Ed.) c. 231, § 144. *Kneeland* v. *Bernardi*, 317 Mass. 517, 520. There was no evidence of the terms of a fighter-manager contract which we deem essential to such a contract or to support the allegations in the bill in these respects. Such allegations cannot be considered by us. For the same reason apparently the judge made no finding as to them.

There is nothing to the "doctrine of reasonableness" urged by the plaintiff. The cases upon which he relies are clearly distinguishable. In *Shayeb* v. *Holland*, 321 Mass. 429, there was an executed contract by way of a lease, with an option to purchase upon notice at an undetermined price. In that case the lessee was permitted to make alterations, to erect a building, and to improve the premises in reliance upon the option to purchase. It was there held that in addition to the relationship of lessor and lessee there was also a relationship of prospective vendor and vendee which warranted the inference that the purchase price would be fair and reasonable if the lessee exercised his option. It is significant that at page 432 it was said, "A contract leaving the price of the land to a future agreement between the parties would be indefinite and incomplete and could not be enforced."

The plaintiff is not aided by the case of *Cygan* v. *Megathlin*, 326 Mass. 732, upon which he places great emphasis. Under his pleadings the plaintiff is not free to prove a contract for a reasonable length of time with reasonable compensation. In the *Cygan* case the plaintiff had already performed his contract, and the question involved was a determination of what would be fair and reasonable compensation for his services according to the terms of that con-

tract. Here the written agreement is entirely executory. But the real difference between that case and the present one is that in the *Cygan* case the terms relative to compensation which were expressed in broad and general language were held not to be too uncertain and indefinite to be enforced. Here there are no terms expressed at all.

The judge made no specific finding relative to the parol contract alleged in the amendment of the bill and the evidence does not appear to sustain that allegation. In any event what we have said with reference to the alleged written agreement is equally applicable to the alleged parol contract. It was too vague and indefinite to be of any effect.

The defendant has not argued his appeal from the interlocutory decree overruling his demurrer so it is treated as waived.

Because of the conclusions we have arrived at it becomes unnecessary to consider other contentions of the parties. The rulings of the judge on the questions of law involved were incorrect.

> *Appeal from interlocutory decree dismissed.*
>
> *Bill dismissed with costs.*