*Northern District*

No. 5051

MICHAEL M. INGALLS

v.

HELEN K. ROSS

(August 27, 1957)

*Present:* GADSBY, P. J., ENO AND BROOKS, JJ.

Case tried to CHERRY, SP., in the District Court of Southern Essex. No. 381 of 1953.

(This opinion has been abridged)

*Brooks, J.* This is an action of contract to recover damages for failure to convey land in Swampscott, Mass. After the death of Helen K. Ross, John H. Green, administrator of her estate, was substituted as party defendant. The answer is general denial and Statute of Frauds.

*There was evidence tending to show that* plaintiff was ready, able and willing to pay $5500 for the land at the time of the negotiations between the parties and that the fair market value of the land at that time was $8000; that the checks referred to were sent and returned as stated in letters hereinafter set forth; that on February 3, 1953, Andrew R. Linscott attached the land in question in an action on behalf of Elsie Mentuck against Helen Ross which attachment was discharged April 6, 1953.

[The negotiations between the defendant-owner

and the plaintiff-prospective purchaser were confined solely to letters between them which the plaintiff claims to constitute the agreement of sale. Because of their length, the letters have been eliminated by the editors. References to their pertinent language appear later in this opinion.]

At the close of the evidence, plaintiff requested the court to rule as follows:

1. The question whether a contract was made is one of law for the court.
2. The various letters between the plaintiff and defendant are to be read together in order to ascertain the effect to be given to them.
3. In the instant case, the offer of the defendant to sell the premises must be interpreted to mean that, if the offer is accepted by the plaintiff, she will execute and deliver a deed of the premises free of encumbrances, upon payment of cash within a reasonable time.
4. The plaintiff accepted the defendant's offer in his letter of January 21, 1953.
5. The request or suggestion that the deed be delivered in Massachusetts, did not excuse the defendant from the contract to sell to the plaintiff.
6. The fact that the defendant was negotiating with some other person did not prevent the formation of a contract with the plaintiff.
7. The fact that the defendant was negotiating with some other person did not excuse the defendant from performing her contract with the plaintiff.
8. The court should, if reasonably possible, interpret the contract so as to make it a valid and enforceable undertaking rather than one of no force and effect.
9. The terms of a written contract containing no latent ambiguity cannot be varied by parol evidence of the meaning thereof.
10. If the defendant retained plaintiff's check for $500.00, until she repudiated the contract, she had no right to withdraw her offer.

11. The plaintiff had until "Spring" to tender the balance of the money.
12. The court will take judicial notice that "Spring" had not arrived when the defendant repudiated the contract.
13. Plaintiff had a right to commence action upon receipt of defendant's letter of February 9, 1953, even though the deed to Mr. Linscott's client was not dated until February 20, 1953.
14. The plaintiff was not required to submit cash while the premises were encumbered by Mr. Linscott's attachment.
15. The defendant exonerated the plaintiff from making any tender by wholly repudiating the contract.
16. Plaintiff was entitled to reasonable assurance that the premises would be free of attachment between the time he received a deed and a reasonable time within which to place it on record.
17. There is no evidence that the defendant was ready, able and willing to discharge Mr. Linscott's attachment on receipt of the balance of the purchase price.
18. The evidence warrants a finding for the plaintiff.
19. The evidence required a finding for the plaintiff.
20. The defendant's letters are sufficient to meet the requirements of the Statute of Frauds.

The court made a finding for the defendant in which it recited the foregoing correspondence and made the following disposition of plaintiff's Requests for Rulings:

1. Given.
2. Given.
3. Not given, because the negotiations were incomplete as to how and when payment was to be made.
4. Not given, because the question of how and when payment was to be made was left open.
5. Not given, because no contract had been made.
6. Given.
7. Not given, because no contract with the plaintiff had been made.

8. Given.
9. Given, but is inapplicable to the facts found.
10. Not given, because there was no contract in existence when the plaintiff mailed his check, for $500.
11. Not given, because no contract had been concluded between the parties.
12. Not given, because it is inapplicable to the facts found, namely, that there was no contract in existence.
13. Given, because plaintiff had a right to sue at any time he saw fit.
14. Not given, because inapplicable to the facts found; no binding contract was in existence before the attachment.
15. Not given, because no contract was in existence.
16. Not given, because plaintiff never received a deed from the defendant's intestate.
17. Given, but see finding of facts.
18. Not given. See finding of facts.
19. Not given. See finding of facts.
20. Not given. See finding of facts.

Plaintiff claims to be aggrieved by the refusal of the court to grant his requests numbered 3, 4, 5, 7, 10, 11, 12, 14, 15, 16, 18, 19 and 20, and by the finding for the defendant.

There are two questions before us. The first is whether at some point in the correspondence between Mrs. Ross and plaintiff or his attorney, Mrs. Ross became obligated to plaintiff to convey to him the real estate in question. If she did become obligated, it was by virtue of letters passing between them, so that the Statute of Frauds was complied with. If she did not become obligated, the Statute of Frauds becomes immaterial.

The pertinent correspondence began with plaintiff's expression of interest in the property and inquiry as to the purchase price. This occurred first February 15, 1952, and again January 7, 1953. On January 10, 1953, Mrs. Ross offered the property for sale for $5500 subject to change or withdrawal

"come Spring." January 13, plaintiff accepted the offer with an accompanying deposit of $100 and a promise to pay the balance on completion of the papers. Did a contract arise on January 13?

It is customary in negotiations for the sale of real estate for the purchaser to bind the bargain with a deposit. He thereby secures an option to purchase the property. The deposit makes it worthwhile for the seller to keep the real estate off the general market. This deposit obviously must be sufficient in amount for that purpose and is for the seller to determine. Had the parties been in each other's presence on January 13, and had Mrs. Ross accepted the $100, or any other sum, a bargain would have been struck for all practical purposes. Until the sum set by the seller was forthcoming, there would be no binding contract.

Similarly, had the parties been together on January 13, reference would have been made to time, manner and place of passing title. Possibly this would have been incorporated with other details in a written agreement. The parties being 1,000 miles distant from each other, it was not possible to proceed so expeditiously. Plaintiff did not know how much of a deposit Mrs. Ross would require until after she had received the $100.

When Mrs. Ross, on January 16, acknowledged receipt of the January 13, letter, plaintiff learned two things. First, that $100 was not acceptable. Second, that she was not going to sign the deed until she received the full purchase price. Both of these requirements Mrs. Ross had a perfect right to insist on. Up to that point there was no binding contract since there had been no meeting of minds. *Thruston v. Thornton*, 1 Cush. 89.

Plaintiff, on January 21, partially met Mrs. Ross's demands by promising that she would receive the balance of the purchase price "when title clears."

This phrase is not too plain. Literally, it might mean as soon as the title examiner had notified plaintiff that the title was free of encumbrances. On the other hand, that is not the usual practice and defendant, on January 29, made it plain that Mrs. Ross would not receive the balance of the purchase price until the papers were on record via the services of an intermediary.

The second transmission to Mrs. Ross of the $100 immediately brought her response. She apparently was not bothered by the promise to pay the balance of the purchase price when title was clear, but she made it plain that $100 was an inadequate deposit, which in fact it was. Up to this time, there obviously was no meeting of minds.

Plaintiff's attorney's letter of January 29, meets Mrs. Ross's requirement as to deposit, judging by her letter of February 2, but entirely fails to meet the condition as to payment, which she reiterated. Nor does the attorney's response on February 5, bring the parties any closer together, in fact it closes the door on any further negotiations and elicits Mrs. Ross's letter of February 9, announcing sale of the real estate to another party.

In its legal aspect this case is analogous to those cases where the parties have not gone far enough in their negotiations to make an enforceable contract. *Wilcox v. Shell Eastern Oil Co.*, 283 Mass. 383, 388; *Bates v. Southgate*, 308 Mass. 170, 172; *Bartlett v. Keith*, 325 Mass. 265; *Cygan v. Megathlin*, 326 Mass. 732, 733; *Caggiano v. March*, 327 Mass. 574, 579. Until the amount of the deposit was determined, it cannot be said that the contract was sufficiently definite to be enforced.

When the matter of the deposit was in effect settled, it was apparent that the parties were not in agreement on the mode of payment. That point was never settled. At no time, therefore, were the

parties in agreement as to essential parts of the contract.

There remains the second question whether Mrs. Ross should have given plaintiff "come Spring" to meet her terms, that is to say, produce an adequate deposit and cash in hand before signing the deed. We think not. Mrs. Ross twice before February 9, told plaintiff that there was another purchaser interested and plaintiff had twice made it plain that he was not meeting her terms as to payment. This we think is analogous to one party to a contract announcing to the other party that he does not intend to carry out his part of the contract, thereby excusing the other party from performance. Restatement of Contracts, §280, 323 and cases cited in Mass. Edition of Restatement.

Mrs. Ross was not required to wait another month or two for plaintiff to meet her terms and that the trial judge was right in his decision and his disposition of the Requests for Rulings, which hinged on the vital matter whether or not there was a contract. *Report dismissed.*

Charles J. Ingram, for the plaintiff.
Pearl & McNiff, for the defendant.