Donohue, J.
This case comes before the court on a motion for summary judgment filed by one of the defendants, Juan Taveras (“Taveras”). The plaintiffs, Mark O’Hagan (“O’Hagan”) and Sotir Papalilo (“Papalilo”), sued Taveras and the other defendants after he decided to sell to another party the parcel of land on which O’Hagan and Papalilo had previously submitted $3,000, in consideration of an option to purchase a portion of that parcel. O’Hagan and Papalilo’s complaint alleges breach of contract, misrepresentations, violations of G.L.c. 93A, and intentional interference with contractual relations. For the reasons that follow, the court ALLOWS Taveras’ motion.
FACTUAL BACKGROUND
After a careful examination of the summary judgment record, the court finds the following facts undisputed:
O’Hagan and Papalilo are real estate developers. Taveras and his wife owned an approximately 95-acre parcel of land in Harvard, Massachusetts that contained their home and several other cottages. Sometime in the early 1980s, Taveras and his wife sold their home and a portion of the parcel, retaining approximately 41 acres of land. Taveras’ wife died in 1990.
*12 In the fall of 1995, O’Hagan and Papalilo began to negotiate with Taveras through his real estate agent, Ralph Bens (“Bens”), who is also a defendant here, to purchase a part — at least half — of the 41 remaining acres. Bens is a broker with the Strawberry Hill Realty Company, Inc. (“Strawberry Hill Realty”), another defendant in this case. David L. Taylor (“Taylor”), the final defendant here, in his capacity as Trustee of the Gebo Lane Realty Trust, apparently also owns an interest in this land, but Tavares always represented to O’Hagan and Papalilo, and indeed, stipulated at oral argument on this motion, that he had authority to sell the property. O’Hagan and Papalilo planned to construct a development of three-bedroom homes on the land they planned to buy from Taveras. O’Hagan and Papalilo had not, however, determined the ultimate size of their development beyond their desire to proceed under a comprehensive permit rather than proceeding under the relevant bylaws, and therefore had not decided just how much land they would purchase from Taveras.
The initial negotiations between O’Hagan, Papalilo, and Taveras led to the drafting of the four-page document which is the subject of this litigation. In this document, which the parties have referred to as the “option agreement,” Taveras granted an “irrevocable option” to O’Hagan and Papalilo to purchase “approximately 21 acres” of his land in Harvard for a period of 18 months. The option agreement continued by stating, “The consideration for the option period shall be a Three Thousand Dollar ($3,000) non-refundable deposit to be paid at the time of execution of this agreement and shall be applied toward the purchase price at the time of conveyance of the property.” The option agreement allowed for an extension of the time period only for completion of “the development approval process,” because, as noted in the document, “(t]he Seller understands and agrees that, in reliance upon this grant of option, Buyer will be expending time, effort and money to secure permits and approvals relating to the development of the property as a residential neighborhood during the Option Period.” The option agreement also required that the buyer exercise the option in writing and specified the ultimate terms and price for the purchase of the property, $650,000, of which $347,000 would be due at closing and the remaining $300,000 balance would be paid through a two-year promissory note that would accrue 8% interest during the second year.
The parties signed the option agreement on January 2, 1996, and O’Hagan and Papalilo paid their $3,000. Crucially, though, the option agreement left description of the portion to be sold, beyond the size of “approximately 21 acres” to be. determined upon the exercise of the option. Hence, the option agreement contained the following clause setting out how the parties would determine the dimensions of the parcel:
1. Property: The property to which this agreement refers consists of the property located at the intersection of Lancaster County Road and Gebo Lane, Harvard, Massachusetts, consisting of approximately 21 acres. The actual subdivision line shall be determined by the engineering firm, Joseph R. Henry & Associates, Inc., from Harvard, Massachusetts. The costs associated with determination of the subdivision line shall be shared equally by both Buyer and Seller. In the event that Buyer and Seller can not agree with the proposed subdivision line for the 21 acres, the Seller shall refund in full the initial $3,000 deposit made with this agreement by Buyer.
During February and March 1996, Bruce Ringwall (“Ringwall"), an engineer for Joseph R. Henry & Associates, Inc., made three separate proposals concerning a division of the property, all of which set aside more than 21 acres for O’Hagan and Papalilo. He also suggested various additional modifications to the land that would accommodate both the future plans of the parties regarding their respective portions, and the town of Harvard, who had to either approve any future development according to its bylaws or grant permits for these projects. By a letter dated April 2, 1996, however, Taveras notified O’Hagan and Papillo that he was declining their “offers” to purchase his land, and returned their initial deposit. On April 4, 1996, Taveras entered into a purchase and sale agreement to sell the entire 41-acre parcel to another person, Louis Russo (“Russo”).[3]
DISCUSSION
Summary judgment is appropriate when there are no material facts in dispute and when the moving party is entitled to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat. Bank v. Dawes, 369 Mass. 550, 553-55 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable factual issue, and of showing that it is entitled to judgment as a matter of law. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). When the party moving for summaryjudgment does not have the burden of proof at trial, that party may meet its burden by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of an element is unlikely to be forthcoming at trial.” Flesner v. Technical Commun. Corp., 410 Mass. 805, 809 (1991); see also Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party demonstrates the absence of a trial issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a factual dispute. See Pederson, 404 Mass, at 17. At that point, the party opposing the motion may not continue to rely on the pleadings, if they are not verified, but must instead answer with affidavits, testimony from depositions, answers to interrogatories, or admissions in *13 the file. Mass.R.Civ.P. 56(e): see also Kourouvacilis, 410 Mass, at 713-14, quoting Celotex v. Catrett, 477 U.S. 317, 323-24 (1986); LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
O’Hagan and Papalilo’s complaint alleges, variously, a breach of contract by Taveras, violations of G.L.c. 93A and misrepresentations by Taveras, Bens, and Strawberry Hill Realty, and intentional interference with contractual relations committed by Bens and Strawberry Hill Realty.[4] The court addresses these counts in turn.
I. Breach of Contract
O’Hagan and Papalilo argue that Taveras breached the “irrevocable” option agreement by returning their initial deposit when they tried to exercise the option, and by not agreeing to any of the proposals or modifications offered by Ringwall, the engineer which both parties had initially agreed to use. Conversely, Taveras asserts that the option agreement was indefinite and unenforceable because it was merely an agreement to agree in the future, based on the proposals by Ringwall. Essentially, then, the option agreement would be a nullity that also could not comply with the statute of frauds, see G.L.c. 259, §1,[5] which mandates that all contracts for the sale of land must be memorialized in a writing, except when supplemented by parole evidence. See Tzitzon Realty Co., Inc. v. Mustonen, 352 Mass. 648, 652-53 (1967), and cases cited. As presented by O’Hagan and Papalilo, though, the parole evidence that would create a genuine issue requiring a trial — in this case, the facts and circumstances surrounding the drafting of the option agreement, the parties’ intent and statements at that time, and the events occurring after the parties signed the option in which they allowed Ringwall to propose how the land should be divided — amounts to nothing more than further negotiations to decide the actual dimensions of the parcel that Taveras would ultimately sell to O’Hagan and Papalilo, upon their exercise of the option and after receiving town approval for their final development plans. When considered on the basis of this summary judgment motion, therefore, O’Hagan and Papalilo’s contract claim reduces to the question of whether an enforceable contract existed between the parties. To answer that question, the court must examine the option agreement which the parties drafted and acted under in this case.
“The interpretation of this written option is a question of law for the court.” Shayeh v. Holland, 321 Mass. 429, 431 (1947); Atwood v. City of Boston, 310 Mass. 70, 74-75 (1941) (discussing the proper uses of parole evidence). O’Hagan and Papalilo reason that the parties intended to be bound by the original option agreement in this case, which set forth a sufficient mechanism for future description of the property to be sold, under the standards announced in Lafayette Place Associates v. Boston Redevelopment Authority, 427 Mass. 509, 517-19 (1998), cert. denied, 119 S.Ct. 1112 (1999). In that case, a development contract between the plaintiff and the city of Boston left other terms for the future, to be decided through binding arbitration. Those terms included the ultimate price, which was also the term left open in Shayeb, 321 Mass, at 431, as determined by the fair market value of the property at the time of final conveyance, and the exact extent of the parcel of land involved. See Lafayette Place Assocs., 427 Mass, at 517-19 & n.10. In response to the City’s averment that the contract was too indefinite to be enforced, the Supreme Judicial Court stated, “If parties specify formulae and procedures that, although contingent on future events, provide mechanisms to narrow present uncertainties to rights and obligations, their agreement is binding.” Id., 427 Mass, at 518. The Court thus found an enforceable contract, but held that the plaintiff could not enforce the contract because it had never expressed a willingness to tender its own performance by entering into the arbitration.[6] Id. at 520-22. Here, while the ultimate source of the uncertainty between the parties — the actual dimensions of the portion that Taveras would sell to O’Hagan and Papalilo — is one of the terms discussed in Lafayette Place, the extent of the disagreement over that term clearly distinguishes this case.
Accordingly, Taveras argues along these lines, that this case is similar to Lucey v. Hero International Corp., 361 Mass. 569, 573-75 (1972), which the Supreme Judicial Court in Lafayette Place, 427 Mass, at 517, also cited in introducing its holding, see supra, but ultimately had to differentiate because Lucey deals with “a totally unspecified or undemarcated property.” Id. at 519 n.10. In Lucey, 361 Mass. at 570, the executed document, a separate purchase and sale agreement, also granted the plaintiff “an option to purchase additional land, ... as mutually agreed upon by both parties.”[7] Hence, the Court held, “(A]n agreement to enter into a contract which leaves the terms of that contract for future negotiation is too indefinite to be enforced.” Id. at 574-75, quoting Caggiano v. Marchegiano, 327 Mass. 574, 580 (1951).[8] The facts in Lucey closely match those undisputed before the court in this case; both involve a course of negotiation between two private parties concerning the purchase of parcels of land, upon which the parties could not agree. Compare Lafayette Place, 427 Mass, at 519 n.10. The court therefore must conclude that the written option agreement here was also too indefinite to be enforced.
The court’s conclusion on this point is bolstered by the language of the option agreement at issue in this case. As noted by Taveras, the clause delineating the parcel to be sold, while mentioning the intersection of two streets and setting out the purported “mechanism” to resolve future disputes, also continues, crucially, that “in the event that Buyer and Seller can not agree with the proposed subdivision line for the 21 *14 acres, the Seller shall refund m full the initial $3,000 deposit made with this agreement by Buyer.” (Emphasis added.) The use of the word “proposed” indicates that the parties had not yet agreed about how ultimately to divide Taveras’ property; Ringwall’s proposals were no more than offers for further consideration by either party. Moreover, this sentence provided the basis for Taveras to return O’Hagan and Papalilo’s initial deposit, and impugns any argument that the option was “irrevocable,” as stated elsewhere in the agreement and contended here. If anything, therefore, the mechanism in this case was only an invitation to future negotiations.
O’Hagan and Papalilo also cite Hastings Associates, Inc. v. Local 369 Building Fund, Inc., 42 Mass.App.Ct. 162, 169 (1997), and Cataldo v. Zuckerman, 20 Mass.App.Ct. 731, 737 (1985), in support of their position that the specified mechanism for resolving disputes in this case was sufficiently definite to allow for the formation of a contract. The principles discussed in those cases, though, do not provide assistance here, for both involved parties who had operated under their relevant contracts before any disputes about price and valuation ultimately arose. See Hastings Associates, Inc., 42 Mass.App.Ct. at 169-70; Cataldo, 20 Mass.App.Ct. at 737-38; see also supra note 8 and accompanying text.
O’Hagan and Papalilo also cannot draw on the implied covenant of good faith and fair dealing that inheres in every agreement to reason that Taveras had an obligation to make a good faith effort to agree on a line for dividing his land. Nonetheless, because the parties had not yet begun to operate under a contract when Ringwall suggested his proposals for subdividing the property, no such obligation arose. Compare Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 473 (1991) (discussing one party’s repudiation as “ ‘a tool engineered to serve th[e] illicit purpose’ of extracting price concessions”), quoting Northern Heel Corp. v. Compo Indust., Inc., 851 F.2d 456, 471 (1st Cir. 1988). With no contract on which to rely, O’Hagan, Papalilo, and Taveras ultimately remained at the stage of “imperfect negotiations” because “all material matters had not been agreed upon[,]” including, principally, the actual area of land that Taveras would sell. Rosenfeld v. United States Trust Co., 290 Mass. 210, 217(1935). Hence, the court ALLOWS Taveras’ motion for summary judgment on the contract claim in this case.
II. Violations of Chapter 93A
O’Hagan and Papalilo’s claims of unfair and deceptive trade practices under G.L.c. 93A fall in the same fashion as their contract claim. In the last analysis, whether directed against Taveras, Bens, or Strawberry Hill Realty, these claims are based on the same flawed argument that one party to the contract, represented by Taveras or his agents, had an obligation to act in good faith in considering future proposed subdivision lines. As the Appeals Court stated in Pappas Industrial Parks, Inc. v. Psarros, 24 Mass.App.Ct. 596, 600 (1987), “[i]t is not, however, immoral, unethical, oppressive, or unscrupulous — and therefore not unfair or deceptive — to break off incomplete and imperfect negotiations ...” Furthermore, O’Hagan and Papalilo have not submitted any evidence of independently liable acts by Bens and Strawberry Hill Realty on this count. Thus, the court must ALLOW Taveras’ motion for summary judgment as to the claims under Chapter 93A.
II. Misrepresentation Claims
O’Hagan and Papalilo’s claims that Taveras, Bens, and Strawberry Hill Realty misrepresented Taveras’ ownership of the property also cannot succeed. “The elements of the tort of misrepresentation are familiar. The plaintiff must show ‘a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiffs detriment.’ ” Ravosa v. Zais, 40 Mass.App.Ct. 47, 52, quoting Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991). Nonetheless, Taveras’ stipulation at oral argument on this motion renders this claim feeble. Moreover, even if there was a misrepresentation about Taveras’ ownership of the property, O’Hagan and Papalilo cannot prove that it caused their damages, see Connelly v. Barlett, 286 Mass. 311, 315-17 (1934), because Taveras ultimately declined their offers when the parties could not come to any agreement about the actual size of the portion he would sell. For these reasons, the court ALLOWS Taveras’ motion for summary judgment regarding O’Hagan and Paplilo’s claims of misrepresentation.[9]
IV. Intentional Interference with Contractual Relations
Finally, O’Hagan and Papalilo’s complaint alleges intentional interference with contractual relations by Bens and Strawberry Hill Realty. As with the misrepresentation claim, though, the plaintiffs have not brought forth evidence of any independent tortious acts by Bens and Strawberry Hill Realty. In particular, O’Hagan and Papalilo have not shown any improper means or motive on behalf of these parties, an essential element for liability under this tort. See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-13, 814-17 (1990). Like Taveras, Bens and Strawberry Hill Realty proceeded as if negotiations with O’Hagan and Papalilo were still ongoing.
ORDER
For the foregoing reasons, therefore, the court hereby ALLOWS Defendant Juan Taveras’ motion for summary judgment.

Taylor, Taveras, O'Hagan, and Papalilo filed a stipulation concerning Taylor on October 31, 1997, under which *15 O’Hagan and Papalilo dismissed Taylor from this action, subject to his remaining as an escrow agent for proceeds of the later sale of the property to Russo.

O’Hagan and Papalilo’s complaint also alleged a fraudulent conveyance from Taveras to Taylor, in order to justify requesting an attachment on the Harvard property, but the court deferred action on the attachment in lieu of the parties’ stipulation of dismissal regarding Taylor. See supra note 3 and accompanying text.

“No action shall be brought. . . [u]pon a contract for the sale of lands ... , or of any interest in or concerning them . . . [ulnless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing, signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.” G.L.c. 259, §1.

In this case, O’Hagan and Papalilo submitted a $3,000 deposit at execution of the option agreement, and began efforts to obtain town approval for their development. The deposits and these efforts could arguably signify a part performance of their obligation under the option agreement, assuming it was enforceable. This circumstance might have in that case excused any non-compliance with the statute of frauds. See, e.g, Fisher v. McDonald, 332 Mass. 727, 729 (1955); Glass v. Hubert, 102 Mass. 24, 43-44 (1869); cf. Barber v. Fox, 36 Mass.App.Ct. 525, 531 (1994) (enforcing potentially indefinite, oral agreement to sell land because plaintiff had significantly changed her position by contracting with defendant and relying on his representations). Nonetheless, given the parties’ uncertain negotiations before and after the drafting of the option agreement, the natural response for Taveras, when faced with proposals by Ringwall to which he could not agree, was to return O’Hagan and Papalilo’s initial deposit. Hence, Taveras’ action cannot be viewed as a revocation or a repudiation.

In Lucey, 361 Mass, at 570-71, the parties submitted prior drafts of their negotiated agreement, one of which specified, before the clause about mutual agreement, that the “additional land . . . shall be Northerly of the conveyed premises and along Lenox Road . . .” Id. at 570. Nonetheless, the final version omitted this language. Id. at 571. Here, the only drafts referenced by the parties in the summary judgment record arose after execution of the option agreement and incorporate the proposals offered by Ringwall. Although O’Hagan and Papalillo dispute how Taveras gave notice that he did not agree with these proposals, the substance of this dispute and those later modifications only serves to further illuminate the depth of the parties’ disagreements.

In Caggiano, 327 Mass, at 581, the Supreme Judicial Court distinguished Shayeb as dealing only with an option to buy preceded by a lease that had allowed for initial improvements by the tenant, whose assignee later exercised the option. In Shayeb, 321 Mass, at 430-32, also cited in Lafayette Place, 427 Mass, at 517, the Court read into the lease a reasonable price term for the ultimate sale. This situation is not similar to the situation here, a pure exchange of money for property (or services, as in Caggiano), however, because the landlord and tenant in Shayeb had already begun to operate under their negotiated agreement.

It is not clear whether O’Hagan and Papalilo also make a claim, in reliance on Taveras’ status as sole owner, concerning their expenses incurred in seeking town approval and for the funds they paid to Joseph R. Henry & Associates, Inc., for the engineering services of Ringwall. Their general complaint only asks for “the benefit of the bargain” and “the amount of their damages plus interest and costs.”