GORNEY'S, INC. *vs.* FALVEY LINOLEUM CO., INC.

Norfolk. October 5,.1951. — April 30, 1952.

Present: QUA, C.J., WILKINS, SPALDING, & WILLIAMS, JJ.

*Landlord and Tenant*, What constitutes lease. *Contract*, What constitutes, For lease.

The sending of duplicates of a prospective lease, executed by the lessee, by an authorized representative of the lessee to an authorized representative of the lessor with a letter requesting him to "inform" the writer within a stated time whether the lease was "acceptable to" the lessor, "otherwise, we shall call the deal off," contemplated acceptance by the lessor of such offer by delivery back to the lessee of a duplicate of the lease signed by the lessor, and the lease never became operative where there was no such delivery within the time of the offer and the

lessee's representative thereupon notified the lessor's representative in effect that the offer was withdrawn, although within the time of the offer the lessor's representative orally informed the lessee's representative that the lease had been signed by the lessor and was acceptable to the lessor subject to a modification, to which the lessee's representative orally agreed, as to the time for payment of the first rent.

BILL IN EQUITY, filed in the Superior Court on March 13, 1951.

The defendant appealed from a decree entered by order of *Beaudreau*, J.

*J. H. Rosenshine*, for the defendant.

*S. P. Coffman*, for the plaintiff.

SPALDING, J. The principal objective of this bill brought under G. L. (Ter. Ed.) c. 231A is to determine whether a certain instrument ever became effective as a lease between the plaintiff and the defendant. The case was submitted upon a statement of agreed facts.

The defendant at all times here material was the owner of certain premises in Quincy. On February 8, 1951, the plaintiff's attorney mailed to the defendant's attorney copies of a proposed lease, both of which had been executed by the plaintiff. Enclosed with the leases was a letter dated February 8. These were received on the following day, February 9. In the letter the plaintiff's attorney, after pointing out certain changes that had been made in the lease, concluded as follows: "Please inform me within a week whether these leases are acceptable to your client, otherwise, we shall call the deal off and the leases not effective." The term of the proposed lease was five years and was to commence on the first day of May, 1951, unless the lessor should give the lessee written notice on or before March 15, 1951, that it was to begin on April 1, 1951. The lease called for an annual rental of $6,000 which was to be paid in instalments of $500 on the first day of each month in advance, the first payment to be made on the first day of May or June, 1951, depending on whether the tenancy was to begin on April 1 or May 1. In either event the lessee was to pay no rent for the first month.

Upon receipt of the above mentioned letter the defendant's attorney called the plaintiff's attorney on the telephone and said that he would forward the leases to the officers of the defendant, who were then in Florida, for their consideration; he further stated that inasmuch as the provision for cash security had been eliminated he thought that "the proposal would have a better appeal to them" if he could inform them that the plaintiff would pay the first month's rent of $500 upon delivery of an executed copy of the lease. The plaintiff's attorney agreed that the plaintiff would do so.

On February 13, 1951, the defendant's attorney informed the plaintiff's attorney by telephone that the leases were acceptable to the defendant and had been executed by it, and that an executed copy would be delivered to the plaintiff's attorney on February 14, 1951, by one Bernhardt of the defendant corporation. The plaintiff's attorney promised to deliver to Bernhardt the plaintiff's check for $500 for the first month's rent upon delivery of the lessee's copy of the lease.[1] Pursuant to this arrangement Bernhardt called at the office of the plaintiff's attorney in the forenoon of February 14, 1951, for the purpose of delivering an executed copy of the lease, but the latter was not in his office. Later in the morning Bernhardt informed the plaintiff's attorney by telephone that he had an executed copy of the lease ready for delivery and that he understood that upon delivery of it to the plaintiff's attorney he was to receive from the latter a check for $500 for the first month's rent. The plaintiff's attorney stated that the plaintiff's officer who signed checks was in Maine but was expected back within a day or two and that he would call Bernhardt on the telephone when he had the check. "The plaintiff's . . . attorney did not telephone to nor communicate in any way with . . . Bernhardt at any time thereafter."

On the following day, February 15, the defendant's attor-

---

[1] The statement of agreed facts provides: "All references herein to 'the first month's rent' mean the rent which would be due under the provisions of said lease on June 1, 1951, if the term of said lease should commence as of May 1, 1951, or on May 1, 1951, if the term of said lease should commence as of April 1, 1951."

ney called the plaintiff's attorney on the telephone and asked him why the plaintiff had not accepted the lease and paid the first month's rent. The plaintiff's attorney replied that the plaintiff had "heard rumors that there was some trouble with heating the premises" and would not accept the lease. Thereupon the defendant's attorney wrote a letter to the plaintiff's attorney dated February 15 in which, after reciting their previous conversation on February 13 and the fact that he had instructed Bernhardt "to follow through on this basis," he took the position that the lease was binding on the plaintiff.

The plaintiff's attorney in a letter to the defendant's attorney dated February 28, 1951, stated, "Since, up to this date, the lessor's executed copy of the lease has not been delivered, I am obliged to inform you that all negotiations are terminated and that the leases are not effective in accordance with the express stipulation of my letter of February 8, 1951." By letter dated March 5, 1951, the defendant's attorney replied in substance that inasmuch as the plaintiff had repudiated its obligations under the lease he was advising his client to look for another tenant and to hold the plaintiff liable for any loss which might be sustained by reason of its default. In a letter to the plaintiff dated March 8, which was received the following day, the defendant gave notice of its election to commence the term of the lease on April 1, 1951, instead of May 1, 1951, pursuant to the provisions of the lease. On March 29, 1951, the defendant's attorney notified the plaintiff where it could obtain the keys to the premises and that it could take possession immediately. Possession of the premises was never taken by the plaintiff.

It was agreed that all communications, oral and written, made by each attorney were duly authorized by his client.

The court below entered a decree to the effect that the lease never became operative and was not binding on the plaintiff. The defendant appealed.

The decree was right.

We are of opinion that the proposal sent by the plaintiff

to the defendant on February 8, 1951, contemplated that no lease was to become operative until the defendant had accepted it by returning an executed duplicate to the plaintiff. *Diebold Safe & Lock Co.* v. *Morse,* 226 Mass. 342. *Henchey* v. *Rathbun,* 224 Mass. 209. There was no such acceptance here. To be sure there was an acceptance within the period limited by the offer with the qualification that the first month's rent was to be paid on delivery of the lease, which acceptance in turn was agreed to by the plaintiff. But the modified agreement was not an acceptance of the original offer and did not put the lease into operation. See *Wiessner* v. *Ayer,* 176 Mass. 425. The new agreement, being oral, came within G. L. (Ter. Ed.) c. 183, § 3, which provides that "An estate or interest in land created without an instrument in writing signed by the grantor or by his attorney shall have the force and effect of an estate at will only." See *Michael Chevrolet, Inc.* v. *Institution for Savings,* 321 Mass. 215, 218. If it be assumed that the conduct of the plaintiff was such as to lead the defendant to believe that the time of the offer was extended beyond the period originally limited, it nevertheless was withdrawn by the plaintiff on February 28 prior to any effective acceptance of it by the defendant.

*Decree affirmed.*