HOOK BROWN COMPANY *vs.* FARNSWORTH PRESS, INC.

Suffolk.   October 9, 1964. — January 5, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Contract,* For lease, Construction. *Landlord and Tenant,* Contract for lease. *Frauds, Statute of. Equity Jurisdiction,* Specific performance. *Equity Pleading and Practice,* Decree. *Words,* "One year renewable."

A letter written by a prospective lessee of a floor in a building to a prospective sublessee of space on the floor, stating that "In accordance with" a conversation between the parties the lessee would sublease to the sublessee space on the floor "as discussed" " for one year, renewable" at a specified yearly rate per square foot, was, in conjunction with a floor plan submitted to the lessee before the letter was sent, a sufficient memorandum of the essential terms of the previous oral undertaking of the lessee to satisfy the statute of frauds, G. L. c. 259, § 1, Fourth, and c. 183, § 3.   [310]

Where it appeared in a suit in equity that, in conversations between the plaintiff, the lessee under a lease of a floor in a building, and the defendant, a prospective new lessee of the floor, the defendant undertook to sublease space on the floor to the plaintiff on certain terms if the plaintiff would give up the existing lease, and that thereafter the defendant sent the plaintiff a letter constituting a sufficient memorandum of the defendant's undertaking to satisfy the statute of frauds and the plaintiff in reliance on such undertaking did give up the existing lease and moved into the space agreed upon, the plaintiff was entitled to a decree for specific performance of the defendant's undertaking.   [310-311]

In the circumstances, an undertaking by a lessee of a floor of a building to sublease space on the floor to a prospective sublessee "for one year, renewable," must be interpreted in the light of conversations between the parties as to the meaning of those words, and, so interpreted, was not limited to a single renewal or extension of the sublease for one year.   [311-312]

In a suit in equity wherein the plaintiff, having surrendered an unexpired lease of a floor in a building in reliance on an undertaking by the defendant as a prospective new lessee of the floor to sublease space on the floor to the plaintiff for a "renewable" term of one year, sought specific performance of such undertaking, a decree in the plaintiff's

favor should not have ordered the giving of a sublease containing all the detailed terms of the lease surrendered by the plaintiff, but merely the terms agreed upon by the plaintiff and the defendant and a requirement that the sublessee comply with the provisions as to use of the premises contained in the new principal lease from the owner to the defendant, and should have limited the sublessee's privilege of renewal or extension to the duration of the new principal lease. [312–313]

Bill in equity filed in the Superior Court on August 2, 1962.

The suit was heard by *Chmielinski, J.*

*Robert L. Schneider* for the defendant.

*Kirk S. Giffen* for the plaintiff.

Cutter, J. The plaintiff (Hook) seeks specific performance by the defendant (Farnsworth) of an oral agreement (of which there was a written memorandum mentioned below) to give a sublease of part of the ninth floor of a building owned by Boston Wharf Company (Wharf). Farnsworth appealed from a final decree directing it to execute and deliver a lease for one year from December 1, 1961, to "continue . . . from year to year until . . . [Hook] shall at a reasonable time prior to November 30th of any year . . . give . . . [Farnsworth] written notice of its intention to terminate this lease on the 30th day of November following: Provided, nevertheless, that in any event this lease shall terminate on Nov[ember] 30, 1966." The evidence is reported.

The trial judge made the following findings. For some years prior to November, 1961, Hook had been lessee of the ninth floor under a series of leases from Wharf. Its then current lease was to expire on November 1, 1962. During the period of its occupancy it had spent considerable sums for improvements. In October, 1961, Hook and Wharf discussed a then existing rental arrearage and the possibility of less space. Shortly thereafter Farnsworth, Hook, and Wharf discussed the possibility that Farnsworth could obtain space on the ninth floor then occupied by Hook. An oral agreement was made "under the terms of which . . . [Farnsworth] agreed to sub-lease approximately one-half the" ninth floor to Hook. Hook was "to abandon . . .

negotiations with . . . Wharf . . . and . . . [Farnsworth was] to lease the entire ninth floor from . . . Wharf." On November 20, 1961, a written memorandum, quoted in the margin,[1] was handed by Farnsworth to Hook. Hook paid the agreed rent to Farnsworth from the date of its occupancy to the date of the trial (March 25, 1963). On August 7, 1962, Farnsworth gave to Hook a notice to quit the subleased premises on October 1.

The judge concluded that there was "a valid oral lease . . . in October or November of 1961," that Hook relied upon Farnsworth's representations and "as a result . . . surrendered its lease to . . . Wharf," that the written memorandum (fn. 1) satisfied the statute of frauds, and that Hook was "entitled to a yearly renewable lease of" the subleased space "for the life of the lease between . . . [Farnsworth] and . . . Wharf." The final decree directed Farnsworth to execute a lease containing numerous detailed provisions which cover about nine pages of the printed record.[2] This lease might run until November 30, 1966 (fn. 3).

Farnsworth contends (a) that the letter memorandum of November 20, 1961, constituted the written lease from it to Hook; (b) that, even if this letter is regarded as merely a memorandum to satisfy the statute of frauds, it was error to admit parol evidence to vary the terms set out in the memorandum; (c) that there is no basis for concluding that Farnsworth is estopped to assert the statute of frauds; and (d) that all Hook may properly claim is a one year sublease beginning December 1, 1961, which could be renewed once, or extended once, for one year from December 1, 1962, so that Hook now (in 1964) is a tenant at sufferance. The soundness of each of these contentions depends in some

---

[1] This read, "In accordance with our conversation, November 20, 1961, we will lease to you space on the ninth floor as discussed . . . on Monday, November 21, 1961. We will lease to you *for one year, renewable.* The rate for this space will be at the rate of 60¢ per square ft. per annum. . . . Farnsworth Press, Inc.    /s/ Malcolm Berman, President" (emphasis supplied).

[2] The lease referred to in the decree in most respects (other than in stating matters appropriate to a sublease of part of a floor rather than a lease of a whole floor from the owner of the fee) is in the language employed in the lease from Wharf to Hook, surrendered in November, 1961.

measure upon whether the trial judge correctly admitted, subject to Farnsworth's exception, testimony concerning conversations between representatives of Hook and Farnsworth prior to, and shortly after, the delivery of the letter memorandum.

The testimony (in part conflicting) would have justified findings that the following conversations took place. Brown, Hook's president and treasurer, talked with Berman, president and treasurer of Farnsworth, on various occasions prior to November 20, 1961. Hook wanted less space on the ninth floor and Farnsworth was interested in getting space there. As Brown testified, "The only way . . . [Hook and Farnsworth] could get the same rent [from Wharf, which was reluctant to divide floors] was [for] one of us . . . to take a lease for the whole floor . . . . So . . . [Berman] said . . . [Farnsworth] would sub-lease to . . . [Hook] and . . . would take on the [ninth] floor if . . . [Hook] would give up . . . [its] lease. I didn't want to give up . . . [Hook's] lease without assurance that I would get the [sub-]lease. This . . . [Berman] said he would do by writing me a letter, and he would give . . . [Hook] a one-year renewable lease. I asked him how long that was. He stated 'as long as you want,' he wasn't in any need of" the space. The "same rent that" Hook was paying to Wharf in its then existing lease was to be paid, "the same terms that we were . . . paying . . . Wharf." A plan was drawn up showing the space Hook required. This was submitted to Berman.

After receipt of the letter memorandum, Ives (of Hook) and Brown talked promptly with Berman "to find out . . . what he meant by one-year renewable" (see fn. 1, italicized language). Berman "said we could stay there as long as we wanted to. . . . 'I have no need for this space.' "

After receipt of the letter memorandum, Hook gave up its lease and moved its equipment into its designated space as agreed with Berman. Except for moving its machinery, Hook seems to have made no expenditures because of its move. It never asked Berman for a lease. The letter

memorandum of November 20, 1961, was sent by Berman to Hook without consultation with Farnsworth's counsel.

1.  The trial judge seems to have regarded the November 20 letter as merely a memorandum of an oral arrangement made that day.  Although some testimony may indicate that the letter itself was intended as a lease, the somewhat confused testimony would justify the conclusion that it was merely a memorandum of an oral arrangement.

2.  The letter memorandum did not contain many provisions which might have been appropriate for inclusion in a formal sealed lease.  See analogy of *Epdee Corp.* v. *Richmond,* 321 Mass. 673, 675 (agreement to sell land).  The testimony, however, showed only two matters which were dealt with in conversations but not specifically dealt with in the letter, viz. (a) the space to be occupied by Hook, a matter covered in detail by the floor plan submitted to Berman prior to the transmission of the latter's letter and impliedly incorporated by reference in the letter (see Corbin, Contracts, §§ 512, 515), and (b) the times of payment of the rent, which were shown by Brown's somewhat ambiguous statement that the rent was to be "the same terms that we were . . . paying . . . Wharf."  This statement is consistent with what is said in the letter (fn. 1), viz. that the "rate . . . will be . . . 60¢ per square ft. per annum."  We regard it as meaning that rent payments were to be made as provided in Hook's former lease from Wharf.

Taken together with the floor plan, the letter sufficiently for purposes of the statute of frauds (G. L. c. 259, § 1, Fourth, and G. L. c. 183, § 3) reflected the essential terms (*Shayeb* v. *Holland,* 321 Mass. 429, 430) of the oral undertaking by Farnsworth.  See *Cousbelis* v. *Alexander,* 315 Mass. 729, 730–731; Restatement: Contracts, §§ 207, 208; Williston, Contracts (3d ed.) § 567, et seq.; Corbin, Contracts, § 499, et seq.  Cf. *Fichera* v. *Lawrence,* 312 Mass. 287, 289; *Bouvier* v. *L'Eveque,* 324 Mass. 476, 478.  Not only because of the letter memorandum, but also taking into account Hook's part performance by surrendering its lease from Wharf and moving its equipment in reliance on Farns-

worth's promise, specific performance of the lease contract recorded in the memorandum was justified. See *Harrell* v. *Sonnabend,* 191 Mass. 310, 311–312; *Winstanley* v. *Chapman,* 325 Mass. 130, 133. See also *Andrews* v. *Charon,* 289 Mass. 1, 5–8; *Orlando* v. *Ottaviani,* 337 Mass. 157, 161–162; Restatement: Contracts, § 197; Hall, Landlord and Tenant (Adams and Wadsworth, 4th ed.) §§ 13, 20, 168. Cf. *Chester A. Baker Inc.* v. *Shea Dry Cleaners Inc.* 322 Mass. 311, 313; *Gorneys Inc.* v. *Falvey Linoleum Co. Inc.* 328 Mass. 646, 649–650. Cf. also *Farris* v. *Hershfield,* 325 Mass. 176, 177–178. The question for determination thus is the proper interpretation of the lease contract described in the letter.

3. Farnsworth contends, in effect, that the meaning of the term "one year renewable" is fixed by decisions holding that a new lease, given pursuant to a covenant to renew in a former lease, need not itself contain a further covenant to renew. See *Cunningham* v. *Pattee,* 99 Mass. 248, 252–253; *Gardella* v. *Greenburg,* 242 Mass. 405, 407; Hall, Landlord and Tenant (Adams and Wadsworth, 4th ed.) § 100. See also *DaRocha* v. *Macomber,* 330 Mass. 611, 613. The letter memorandum, however, was not a formal integrated document. Immediately upon receipt of the letter memorandum, the meaning of the term "one year renewable" was discussed by Berman and Brown. This was done substantially contemporaneously with Hook's receipt of the letter and before action by Hook to surrender its then existing lease in reliance upon the letter. The judge could justifiably conclude upon conflicting evidence that the parties, who were still negotiating, agreed upon the sense in which they were using the term. The evidence concerning the discussions was admissible. See *Nickerson* v. *Weld,* 204 Mass. 346, 354–355; *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251, 253–254; *Martin* v. *Jablonski,* 253 Mass. 451, 456–457; *Gainsboro* v. *Shaffer,* 339 Mass. 1, 3; Corbin, Contracts, §§ 527, 536–543B; Williston, Contracts (3d ed.) §§ 609B, 627, 629, 631, 632; McCormick, Evidence, §§ 219, 220; Wigmore, Evidence (3d ed.) §§ 2461–2466. See also *Rizzo* v. *Cunningham,* 303 Mass. 16, 21;

*Cohen* v. *Garelick,* 344 Mass. 654, 657; *Wm. P. Zinn & Co.* v. *Shawnee Pottery Co.* 148 F. Supp. 322, 324–325 (S. D. Ohio), affd. 240 F. 2d 958 (6th Cir.). Cf. *Joseph E. Bennett Co. Inc.* v. *Fireman's Fund Ins. Co.* 344 Mass 99, 106. In the light of Brown's and Ives's testimony, the judge was justified in concluding that more than one extension or renewal of the sublease for one year was intended.

4. The final decree directed Farnsworth to execute a detailed lease containing essentially the same provisions (fn. 2) as the former lease from Wharf to Hook. The letter memorandum made no provision concerning such details. Hook and Farnsworth undoubtedly contracted with knowledge of the leases which they severally held or had held from Wharf, but they did not, so far as the testimony shows, agree to incorporate those terms in the sublease, apart from Brown's testimony (mentioned above) about ''the same terms that we were . . . paying . . . Wharf.'' These terms, we think, cannot be taken to be more than the terms as to times of payment. Also we think that it is unreasonable to infer that Farnsworth bound itself to Hook to give any renewal or extension of the sublease beyond the term of the principal lease which it was taking from Wharf, that is, beyond the period of occupancy of the ninth floor to which Farnsworth was to be entitled as of right.[3] The 1961 lease from Wharf to Farnsworth has not been shown to have given to Farnsworth any privilege to obtain a renewal or extension of that lease. In the absence of some explicit indication that representatives of Hook and Farnsworth definitely discussed giving Hook rights beyond those which

---

[3] Farnsworth's ninth floor lease from Wharf will expire at the end of October, 1965, at the same time Farnsworth's lease of the eighth floor expires. The final decree provided that the sublease to Hook should terminate not later than November 30, 1966, which was the date of expiration of a sublease given by Farnsworth to another subtenant. The trial judge, at a hearing concerning the form of the final decree expressed the view that this other sublease showed that Farnsworth had ''every expectation of . . . continued occupancy of the premises'' even after the expiration of the principal lease. We do not regard this evidence of dealings with another subtenant as controlling in respect of the sublease by Farnsworth to Hook. There was evidence which would have justified the judge in inferring that Hook (despite the circumstance that in 1961 its rent to Wharf was in arrears) could probably have obtained a new lease from Wharf and that Farnsworth can probably do so in 1965, if it wishes to do so.

Farnsworth then was about to possess, we think that the parties should be taken to have discussed the sublease with reference to the duration of the principal lease then to be given.

The final decree should have required Farnsworth to give merely a simple written renewal sublease each year, if Hook should so request, the last such renewal to expire not later than the expiration of Farnsworth's 1961 lease from Wharf of the ninth floor. Such sublease should have contained in appropriate form only the terms set out in the letter memorandum and the plan, together with a suitable adaptation to a sublease of essentially the terms as to time for payment of rent embodied in the principal lease to Farnsworth from Wharf. As Hook must have taken its sublease with knowledge that Farnsworth would have a principal lease of the type usually granted by Wharf, the sublease should have required Hook so to conduct itself as to comply with the provisions in the principal lease governing use of the premises. See *Wheeler* v. *Earle,* 5 Cush. 31, 35; *Miller* v. *Prescott,* 163 Mass. 12, 13; Swaim, Crocker's Notes on Common Forms (7th ed.) §§ 747, 759.

5. The final decree is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.                                    *So ordered.*